# Clingan *versus* Mitcheltree.

An instrument in the following words, "I do hereby will all I have to my beloved wife Jane, for her to have and hold for ever," executed and attested according to the Act of 1833, is sufficient to pass the entire real and personal estate of the testator, to the devisee.

The execution of a deed subsequent to the date of the will, by which the testator conveyed a portion of his real and personal estate, to a trustee for the use of his wife, would not operate as a revocation of the will.

Evidence, that a testator who had given his will into the possession of his wife, had afterwards frequently made ineffectual searches for it, with a view of destroying it, and that the wife, the sole devisee therein, brought forward a paper alleging it to be his will, and in his presence burnt it, which he immediately declared to be right, will not amount to a revocation of the will.

To make a cancellation, burning, or obliteration of a will efficacious as a revocation, it must be done by the *express direction* of the testator, and his subsequent ratification would not be equivalent to a previous command.

[Clingan *v.* Mitcheltree.]

Whether a will duly executed, and which the testator was prevented from revoking by the fraud of a devisee, could be regarded as revoked, so far as the party to the fraud was concerned—*dubitatur*—Per Knox, J.

A will executed under all the solemnities and formalities required by the statute, cannot be set aside by the declarations of the devisee, testified to by persons interested in the destruction of the will.

ERROR to the Common Pleas of *Mercer county.*

This was an action of ejectment by Ann Jane Clingan against Jane Mitcheltree and others, to recover the one undivided eighth part of a tract of land in Mercer county. It was conceded that Dr. John Mitcheltree died seised of the premises, and both parties claimed under him. The plaintiff claimed as his sister and one of his heirs at law. The defendant rested upon the following will :—

"Mrs. S. Heart : I, John Mitcheltree, do hereby will all I have to my beloved wife, Jane, for her to have and hold for ever.
January 9th, 1839.

                                              " JOHN MITCHELTREE.

    Test. Witnesses :
ELIJAH FLOWERS,
JAMES COLLINS."

Dr. Mitcheltree died on the 6th February 1852, leaving his wife, Jane, surviving him. He had no issue ; but the plaintiff, a sister, and the issue of seven deceased brothers and sisters, were his heirs at law.

Jane Mitcheltree, the widow and devisee, died pending the action, having devised the same to other parties than the plaintiff ; and her executors, John M. Irwin and Thomas Porter were substituted.

The plaintiff then read the deposition of Robert Mitcheltree, a nephew of Dr. John Mitcheltree, as follows :—

"I had a conversation with Mrs. Jane Mitcheltree about the last of March or first of April, immediately after the doctor's death ; she told me that she knew very well that the will which she then held was not Dr. Mitcheltree's will, nor neither did he know that it was in existence at that time ; he hunted for it many a time to destroy it, but could not find it, she kept it secreted ; she said the last time he hunted for it he got very angry because he could not find it ; she got up and walked out of the room, and got a piece of paper and folded it up, and came back into the room and throwed it into the fire right before him ; he said—What's that, my dear, you have thrown into the fire ? The little will you gave me ; I suppose you will rest contented about it now ; he said that was right ; she said he never asked her anything more about it until the day of his death ; she told me not to tell any person what she had been telling me.

[Clingan v. Mitcheltree.]

" Cross-examined by defendant's counsel: She said she was going to hold by the will as long as she could; I am a nephew of Dr. Mitcheltree, and son of Thomas Mitcheltree; my father died before Dr. Mitcheltree; I think about five months; (*Re-ex.*) During the time of the conversation with Mrs. Jane Mitcheltree, Elizabeth Horton passed through the room several times, and Sally Polk, the black girl, came in, and was putting some wood in the stove, and Mrs. Mitcheltree told her to clear out of that, for she was always gaping to hear all she could hear; Mrs. Mitcheltree was crying nearly all the time."

Several other witnesses, all of them belonging to the Mitcheltree family, and most of them claimants against the will, testified to similar declarations of the widow. Several of them also testified as to the declarations of Dr. Mitcheltree after the making of his will, and a short time before his death, as to the manner in which he intended to dispose of his estate.

The plaintiffs also gave in evidence the following instrument of writing :—

" Know all men by these presents that I John Mitcheltree does hereby convey, sell and grant in trust to Samuel Scott Ewing in trust for my dearly and well beloved wife Jane Mitcheltree, all that house and lot or lots, now occupied by Dr. John Irwin, for her to have and hold for ever; also, one house and lot and small store house known as the Murdock property, and now occupied by him and family, and the store by Wheeler as a tin shop; also, one out lot about one and a one quarter acres of land, also her ten shares in the Mahoning County Bank; and thirty shares more on which there is now paid in on the same fifty per cent, together with whatever may be paid in at the time of my death; also, my best horse and buggy and harness, also all carpets, china and queensware, and silver ware, such as spoons, &c., &c., two beds with plenty of bedding, four tables and two setties and two bureaus, together with a house and lot now owned by a saddler, formerly owned by Armstrong Irwin, for her the said Jane, my well beloved wife, to have and to hold for ever. Given under my hand and seal this 2d July 1851.

" JOHN MITCHELTREE.

" Witness:
" M. L. MURDOCK."

The defendants, in rejoinder, proved, under objections by plaintiff, by a number of witnesses, the declarations of Dr. Mitcheltree, at various times and to different persons, during the years 1851 and 1852, that he had made a will, by which he had given all his property to his wife. The real and personal estate amounted to about $125,000 in value.

[Clingan *v.* Mitcheltree.]

The plaintiff submitted, among others, the following points :—

1st. The court is requested to charge the jury that the paper offered in evidence by defendants, as the last will and testament of John Mitcheltree, does not contain words sufficiently descriptive of real estate to pass it.

2d. It is destitute of the solemnity which usually attends the framing and execution of wills, and has the appearance of levity, and of being made for a temporary purpose merely.

3d. The Act of 1833, relating to wills, being silent as to the mode of proof by burning, tearing, &c., a revocation by such means is provable as any other fact at common law.

4th. If the jury believe that Dr. John Mitcheltree was searching for the paper in question to burn it, and his wife, the sole devisee in it, threw another paper into the fire before him, and burned it in his presence, inducing him to believe it was the paper he was seeking to destroy; he telling her at the time that "that was right; it was what he wanted done with it;" such burning would, as against her, and all claiming under her, be a revocation by the testator. And there being no others interested in the paper but her, and those claiming through her, she and they would be stopped from denying it, and therefore the plaintiff is entitled to recover.

5th. Fraud vitiates everything, and no one can take advantage of his or her own wrong; therefore, if the jury believe from the testimony of Mrs. Rachel Mitcheltree and others that Mrs. Jane Mitcheltree induced her husband, Dr. John Mitcheltree, to believe that she had burned that will, and he acted under that belief, then she, and those claiming under her, cannot come into court and claim under or through it now.

6th. That revocation is ordinarily a question of intention, evidenced by proper acts; but when the devisee induces the testator to believe that such acts have been performed, when in fact they have not been done, but have been prevented by such devisee, then the intention to revoke is to be taken to have been executed. Consequently, if the jury believe that Dr. Mitcheltree wished to burn or destroy this will, and was prevented from doing so only by the artifice or fraud of Mrs. Jane Mitcheltree, then the revocation was complete under the Act of 1833.

7th. That the paper dated July 2, 1851, produced under an order of this court, and given in evidence by plaintiff, though in form an assignment to a trustee, for the benefit of the sole devisee in the paper of 1839, of a portion of the same property, if intended to take effect after Dr. Mitcheltree's death, would be of a testamentary nature, and inconsistent with the former, and therefore a revocation of it.

The defendant also submitted the following points :—

1st. That the will of John Mitcheltree given in evidence is ope

[Clingan *v.* Mitcheltree.]

rative to vest in Jane Mitcheltree, his late widow, all his estate, real, personal, and mixed.

2d. That nothing short of an actual burning of a last will fills the requirements of the Act of the 8th of April 1833, to establish a destruction of a will by burning, and that the evidence of Robert Mitcheltree and Elizabeth Horton is not sufficient for this purpose, and therefore plaintiff is not entitled to recover.

3d. That the deed of John Mitheltree to S. S. Ewing, in trust for Jane Mitcheltree, dated July 2d, 1851, can only operate to revoke the will in evidence *pro tanto* as to the property embraced in said deed.

The court below (McCalmont, P. J.) refused to instruct the jury, as requested, in the points presented by the plaintiff. The defendants' points were answered as follows :—

" 1st Point. Answered in the affirmative.

" 2d. As to this point we have some doubt, but the jury will take our answer as binding upon them. Had Dr. Mitcheltree expressly directed his wife to destroy or burn the will, and in his presence she had burned a paper, which she represented was the will (it being in her possession), and the husband afterwards labored under the delusion, we doubt whether it would not have been such a virtual compliance with the statute as would have operated to revoke the will. In the case of Doe d. Reed *v.* Harris, 6 *Adolphus & Ellis* 209, it was, however, said by Denman, C. J., 'That a great inconvenience would be introduced by holding that there may be a virtual compliance with the statute, but there is none in saying that if the testator perseveres in the intention of revoking his will, he should fulfil it by some of the means pointed out in the statute; that he shall revoke his will, if not in his possession, by writing, properly attested.' But in the present case we are of opinion that the evidence does not show an *express* direction to Mrs. Mitcheltree to destroy the will. From a subsequent ratification of her act a previous direction might be implied. But our stature uses the word ' *express.*' This word is not in the British statute. It must be considered to have been inserted for some purpose, as our statute seems to be a transcript from the 29th Charles II., carefully altered to meet the intention of our legislature.

" By holding that the deposition of Robert Mitcheltree would be evidence of an express direction, would be making an implied direction equivalent to that required by the statute. The words Dr. Mitcheltree used when the paper was thrown into the fire, according to the deposition of Mitcheltree, were, ' What have you thrown on the fire, my dear ?' which negatived a previous direction to do the act she had done. Indeed the whole deposition seems to negative a previous direction.

" In the case of Boyd *et al. v.* Cook's Executors, 3 *Leigh* 46, in the argument of counsel, the opinion of Roberts, as given in

[Clingan *v.* Mitcheltree.]

his work on Wills, was cited to the effect, that when an intended destruction of a will has been prevented by fraud or contrivance, affirmative parol proof of the '*animus revocandi*' should be received and effect given to the intent so established; that 'even if such intention, so endeavoured to be defeated, was manifested by no act of the testator, it would be consonant to the general maxims of courts of equity to give effect to the intention, and to treat as perfected, that which would have been perfected but for that fraud.'

"For this opinion no authority is cited. Although, as observed by the author, it would be consonant to the maxims of a court of equity to give effect to the intention, and such is the case in construing statutes of frauds and statutes of limitation, so as to prevent frauds, yet we believe that such construction is not allowable under the statute of wills. Had the testator wanted the will to destroy it, and the possession of it kept from him by the devisee, that would not have amounted to a revocation, and it has been decided that an intention to burn, however strongly manifested, is not a compliance with the statute.

"The British decisions are not binding upon us, but in the construction of similar statutes, it is well to regard contemporaneous decisions of enlightened judges of other lands in the absence of any authority of our own.

"The 13th section of our statute of wills, of 1833, seems to have been passed to prevent all constructive revocations by acts of the testator; whether in cases where the will might be accidentally or fraudulently destroyed, or in actual existence. It was necessary for the repose of the community that some general law should be adopted, to guard against the temptation to perjuries, which arose from allowing proof of parol revocations or intentions to revoke, or expressions or acts of that nature. The act is plain and explicit in pointing out certain methods of revocation, and those only. We think it best to approach the letter of the act, rather than to depart from its strictness, and by so doing opening the door to loose interpretations. The point is answered in the affirmative.

"3d Point. Answered in the affirmative."

Under these instructions a verdict and judgment were rendered for the defendants.

The plaintiff thereupon took this writ, and assigned the answer of the court to the plaintiff's and defendants' points, for error.

*Loomis, Stephenson* and *Griffith* for plaintiff in error.

1. The writing of the 9th January 1839, set up as the last will and testament, has not the legal attributes of a will.

2. If it could be regarded as a will for any purpose, the language is too general and indescriptive to pass real estate: *Burn's Ec. Law;* Bradford *v.* Bradford, 6 *Whart.* 244; Doe *v.*

[Clingan v. Mitcheltree.]

Sheppard, 1 *Doug.* 78; Stephenson v. Heathcote, 1 *Eden Rep.* 43; *Powell on Devises* 199; Roe d. Helling v. Yeud, 5 *Bos. & Pul.* 214.

3. The revocation: *Act of* 1833, § 13; Burns v. Burns, 4 *S. & R.* 295; Boudinot v. Bradford, 2 *Yeates* 170; Burtonshaw v. Gilbert, *Cowp.* 52; *Powell on Devises* 634; Wigle v. Wigle, 6 *Watts* 527; Flintham v. Bradford, 10 *Barr* 92; 1 *Burr.* 395; 3 *Co.* 77; M'Caskey v. Graff, 11 *Harris* 326; Gilbert v. Hoffman, 2 *Watts* 66; Jackson v. Summerville, 1 *Harris* 359; Riddle v. Murphy, 7 *S. & R.* 230; Jones v. Murphy, 8 *W. & S.* 275; Bell v. Jackson, 6 *Wend.* 180.

4. The deed in trust dated July 2, 1851, is of a testamentary nature, and is of itself a revocation of the paper set up here as the last will of Dr. Mitcheltree: *Pow. on Devises* 13, 14, and 16; Habergham v. Vincent, 2 *Ves. Jr.* 230; Ingram v. Porter, 4 *M'Cord* 198; Lyles v. Lyles, 2 *N. & M.* 531; Harwood v. Goodright, *Cowp.* 90; *Pow. on Devises* 626; Marshall v. Marshall, 1 *Jones* 433; Murrell v. Livermore, 7 *Eng. Com. Law Rep.* 9; French v. M'Ilhenny, 2 *Binney* 20; Doe v. Spearing, 6 *Term Rep.* 610–11–12–13; Roosevelt v. Heirs of Fulton, 7 *Cowen Rep.* 79.

*N. P. Fetterman* and *Stewart*, for defendants in error.—1. 10 *Bouvier's Bac. Ab.* 489, 490.

2. French v. M'Ilhenny, 2 *Binn.* 19; 6 *Bouvier's Bac. Ab.* 131; *Sid.* 191; *Raymond* 97; 4 *Kent's Com.* 535, (4th ed.); Doe v. Michlem, 6 *East* 486; 10 *Bouvier's Bac. Ab.* 490; Huxtep v. Brooman, 1 *Bro. Ch. Rep.* 437; 6 *Bouvier's Bac. Ab.* 25; Monk v. Mawdsley, 1 *Sim.* 286.

3. Dunlop v. Dunlop, 10 *W.* 153; *Cavett's Appeal*, 8 *W. & S.* 26; Greenough v. Greenough, 1 *Jones* 496; Lewis v. Lewis, 2 *W. & S.* 455; Grabill v. Barr, 5 *Barr* 441; Kurtz v. Saylor, 8 *Harris* 209; Boyer v. Frick, 4 *W. & S.* 357; Boyd v. Cook's Ex., 3 *Leigh* 32; Reed v. Harris, 6 *Ad. & El.* 209; Mole v. Thomas, 2 *W. Bl.* 1043; Moritz v. Brough, 16 *S. & R.* 403.

4. Sprague v. Woods, 4 *W. & S.* 195; Harwood v. Goodright, *Cowp.* 90; 1 *Jarm. on Wills* 159; Hawes v. Humphrey, 9 *Pick.* 360; *Toller* 19; Clarke v. Berkeley, 2 *Vern.* 720; M'Taggart v. Thompson, 2 *Har.* 149; Baxter v. Dyer, 5 *Ves. Jr.* 656; Balliet's Appeal, 2 *Har.* 459.

The opinion of the court was delivered, May 5, 1857, by

KNOX, J.—This was an action of ejectment. The plaintiff claims as heir at law, and the defendants under the will of Dr. John Mitcheltree. The allegations of the plaintiff, are—

1st. That the will does not contain words sufficient to pass the testator's real estate.

[Clingan *v.* Mitcheltree.]

2d. That the will was revoked by the testator in his lifetime.

The writing which the defendants claim as a will is in the following words :—

"I, John Mitcheltree, do hereby will all I have to my beloved wife, Jane, for her to have and to hold for ever.   January 9, 1839.

"JOHN MITCHELTREE.

"Test. Witnesses—ELIJAH FLOWERS,
JAMES COLLINS."

· Upon the back of the paper is endorsed in the handwriting of the decedent, "Dr. John Mitcheltree's will."

That the words used are sufficient to pass a fee simple in real as. well as an absolute estate in personal property is so manifest, that it is unnecessary to cite authorities to prove it.   "All I have, to have and to hold for ever," means every description of property, where there is nothing to show that the words were used in reference to a particular species or kind of property.

To establish the revocation, the plaintiff relies, first, upon a subsequent testamentary disposition of a portion of the devised estate, made by Dr. Mitcheltree in favour of his wife ; and second, upon evidence tending to prove that the will was kept in existence by the fraud of the legatee, after the testator supposed it to have been destroyed by burning.

If the plaintiff's construction of the instrument of writing, bearing date July 2, 1851, was the true one, it would then become necessary to inquire whether it worked an entire, or but a partial revocation of the will.   But we are clearly of opinion that the instrument in question is not of a testamentary character, but simply a trust deed, vesting a present interest, and not revocable at the pleasure of the grantor.   It had, therefore, no effect whatever upon the will, except to lessen the estate belonging to the testator at his death.

The only remaining question relates to the revocation of the will by the alleged fraud of the devisee.

Robert Mitcheltree, a nephew of the decedent, whose father died before the decedent, and who was, as one of the heirs at law, directly interested in setting aside the will, testified as follows. (Here reference is made to the deposition above quoted.)

Other witnesses proved declarations of Mrs. Mitcheltree, that she wished she had never shown the little will; that she knew the Doctor did not intend it for his will; that she knew what his will was, and if the friends would let her alone she would do as he wanted done.   Another testified to a conversation between Mrs. Mitcheltree, the Doctor, and himself, about eighteen months before Dr. Mitcheltree died, the substance of which conversation was that both declared, that at that time the Doctor had no will.

These witnesses were all either directly or indirectly interested

[Clingan *v.* Mitcheltree.]

in defeating the will under which the defendants claimed title to the land in controversy.

On behalf of the defence, it was shown, that Dr. Mitcheltree had frequently declared, from about the date of the will to within a short time before his death, that he had made his will, in which he had devised all his property to his wife; that she knew his views relative to the distribution of it; that she had done as much in making it, and more in keeping it, than he had, and that she would make it right; that he would leave his and her relatives in her hands; that she had as good a right to give away as he had, and that it would be better for all of them, that she should have the final disposition of it.

The Court of Common Pleas instructed the jury, that under the evidence the defendants were entitled to a verdict.

For the plaintiff, it is alleged that the testimony of Robert Mitcheltree, proved a revocation of the will of the testator; or, what amounts to precisely the same thing, that, as it was kept in being by the fraud of Mrs. Mitcheltree, the sole devisee, those claiming under her are estopped from alleging its existence, or asserting its validity.

The 13th section of the Act of 8th April 1833 declares that "no will in writing concerning any real estate shall be repealed, nor shall any devise or direction therein be altered, otherwise than by some other will or codicil in writing, declaring the same, executed and proved in the same manner as is hereinbefore provided, or by burning, cancelling, or obliterating, or destroying the same by the testator himself, or by some one in his presence, and by his express direction."

It is clear that the case in hand is not within the letter of the statute, for there was no subsequent will, and the one in question was not burnt, cancelled, obliterated, or destroyed by the testator, nor by any person at his express direction; and unless we enlarge the statute, by declaring that where a will is kept from destruction by the fraud or misrepresentation of a devisee, it shall be considered cancelled as against the fraudulent party, the validity of this will cannot be denied.

It is a well settled rule of law that actual fraud vitiates every species of contract, and annuls even the decrees and judgments of the highest courts of record. But is the principle applicable to the case before us? Conceding the competency and relevancy of the plaintiff's evidence, it establishes the fact that Mrs. Mitcheltree told her husband that she had burnt the will, when in truth she had not; that he was himself hunting for it to destroy it, and was satisfied with its destruction although he had given no express direction to her to destroy it. Now, even if we should consider his subsequent assent to the supposed destruction as equivalent to an express direction, it would only prove an intention to revoke

[Clingan *v.* Mitcheltree.]

without actual revocation.   But the direction, however express it may be, can never amount to a revocation unless it is followed by burning, cancelling, obliterating, or destroying, otherwise the great object of the statute, which was to prevent parol revocations, would be entirely unaccomplished.   To comply with the statutory requisition of revocation by destroying, there must be some act of destruction, or towards destruction, done *animo revocandi*—mere words will not suffice.

There has probably been no case like the present for adjudication in Pennsylvania since the Act of 1833 ; but there are reported cases bearing a strong resemblance to this, decided by courts whose decisions, though not of authority with us, are nevertheless entitled to great respect.

In the case of Doe on the demise of Reed *v.* Alice Harris, 6 *Adolphus & Ellis* 209, a witness proved that the testator told her that he had sent the legatee, Alice Harris, to fetch the will to him, that he had looked into it, and that when he had seen it he had thrown it on the fire, and that Alice had "scramped" it off the fire.   This appeared to have taken place the evening before the conversation between the witness and the testator.   After the conversation, Alice Harris, the legatee, returned, and when she and the testator retired at night, both sleeping in the same room, the witness heard a quarrel and blows, and upon her going into the room, the testator said that Alice would not give him his will. Alice went down stairs with the witness, and told her that she would not give up the will to the testator, that she had given it to him last night and he threw it on the fire, and that she would rather have the pleasure of burning it herself, and would do so the next morning.   After this Alice begged the testator's pardon, and promised to burn the will the following morning.   The next morning the witness going into the kitchen where Alice and the testator were, heard Alice say, "There, the thing is finished," and the testator then told the witness that Alice had thrown the will upon the fire.   The witness doubting it, he said, "she threw something with writing upon it, on the fire, but I did not have it in my hands to look at it."   The witness answered, "I do not think she has thrown it;" and the testator said, "I will go to Lantwit if I am alive and well, and make another will;" adding that Alice should not have his property, and that he had a son nearer to him. He also said, on several occasions, that the will was one made by Alice and Mr. R. (the attorney who prepared it), and that R. was a thief, and wanted, with Alice, to get everything he had.

The cause was tried before Mr. Justice PATTESON, who stated to the jury, that if they believed the evidence of Esther Frehorn, and were satisfied that the testator threw the will on the fire, intending to burn it—that Alice took it off against his will—that he afterwards insisted on its being thrown on the fire again, with

[Clingan v. Mitcheltree.]

intent that it should be burnt, and that she then promised to burn it, there was a sufficient cancellation within the statute. But when the case came before the King's Bench, the judges all argued that the instruction was erroneous. The Chief Justice, Lord DENMAN, said, that "great inconvenience would be introduced by holding that there may be a virtual compliance with the statute; but there is none, by saying that, if a testator perseveres in the intention of revoking his will, he shall fulfil it by some of the means pointed out by the statute, that he shall revoke the will, if not in his possession, by writing, properly attested, or cancel it, if in his power, by some of the other acts which the statute prescribes.

WILLIAMS, J., said, "It is argued, that if a testator throws his will on the fire, with intention to destroy it, and some one, without his knowledge, takes it away, it is a fraud which ought not to defeat his act. But so it might be said that, if the testator sent a person to throw it on the fire, and he did not, the revocation was still good. Where could such constructions end? The effect of them would be to defeat the object of the statute, which was to prevent the proof of a cancellation from depending upon parol evidence."

PATTESON, J., admitted that he had left the case wrongly to the jury, and Justice COLERIDGE said, "the kind of construction insisted on, would lead to a repeal of the statute, step by step, and that fraud was not sufficient."

The rule for a new trial was made absolute.

In a case upon the same will, touching copyhold lands, the jury found that the will was revoked by burning, and judgment was entered upon the verdict, because a will of copyhold lands was not within the statute of frauds: 8 *Ad. & E.* 1.

In Boyd *et al. v.* Cook, executor of Vass, in the Court of Appeals of Virginia, 3 *Leigh* 32, the testator was blind. Proof was given of his declarations that he had made a will but destroyed it, and that he had no will, but intended making one. The party contesting the will offered further to show that Sarah E. Vass, a daughter of the decedent, and a legatee under the will, had admitted that her father had directed her to destroy the paper produced in court as his will, and that he believed it was done. This evidence was rejected.

The rejection was sustained by the Court of Appeals. In delivering the opinion of the court, Mr. Justice CARR said: "No direction given by a testator to another to destroy his will amounts to a revocation. The statute provides, that no will shall be revoked but by the testator destroying, cancelling, or obliterating the same, or causing it to be done in his presence. Mere parol directions given to a person to destroy the will, could never satisfy the requisitions of the statute, and to suffer them would be to incur the danger the statute meant to avoid."

[Clingan *v.* Mitcheltree.]

In the case of Smith *v.* Fenner, 1 *Gall. C. C. R.* 170, for Rhode Island, a will was attempted to be impeached as having been fraudulently kept in force against the wish of the testator to revoke it. The provision in the Rhode Island statute is the same in substance as the statute of frauds, 29 Car. II. ch. 3. The evidence offered consisted in the declarations of the testator, which were rejected upon the ground, that even if the fraudulent suppression or prevention of revocation was equivalent to an actual revocation, which was said to be exceedingly doubtful, still such fraudulent suppression could not be proved by mere declarations, which could not be permitted to control or annul a solemn instrument.

The cases which I have already mentioned appear to me to bear strongly in favour of the validity of this will; and that the statute should have a strict construction, is clearly established by our own cases of Dunlop *v.* Dunlop, 10 *Watts* 153, *Cavett's Appeal,* 8 *W. & S.* 26, Greenough *v.* Greenough, 1 *Jones* 496, and Lewis *v.* Lewis, 2 *W. & S.* 455. What safety would there be that a testator's intentions would be regarded and made efficacious, if his last will and testament, executed under all the solemnities and formalities of the law, could be set aside by the mere declarations of a devisee tending to prove fraud; testified to, as in the present case, by persons interested in the destruction of the will? There is certainly great safety in adhering to the words of the statute; besides which, is there not a want of power to interpolate other words, or to find equivalents for the express direction of the statute? At all events, there is danger in establishing exceptions to a statutory rule, which, like the present, has been found to be essentially necessary, for the safe enjoyment and secure transmission of real estate, by the experience of ages; for if exceptions once begin, no one can say when, and where, they will end.

But if we were to admit that, where a testator was prevented from revoking his will by the fraud of a devisee, the revocation would be complete, so far as the party to the fraud was concerned; for myself, I never could permit a jury to find the fraud from evidence such as was given upon this trial. A woman far advanced in life, grievously mourning the loss of her husband, is made to admit by her own statements to his relatives, who were interested in having his estate distributed under the intestate laws, that she had prevented the destruction of a will, making her his sole devisee, by imposition and misrepresentation, and this too while she was unhesitatingly asserting her right to the estate by virtue of the will. I do not say that the witnesses for the plaintiff have wilfully misstated the declarations and conversations of Mrs. Mitcheltree, but I am well satisfied of the policy of a rule of law which would prevent such evidence from interfering with the distri-

[Clingan v. Mitcheltree.]

bution of an estate after the death of its owner, evidenced by his own explicit written declaration.

It has often been said that the declarations of a party made in the course of a casual conversation with a stranger, are the weakest of all evidence; and surely the character of the evidence is not improved when it purports to consist of admissions against the interest of the person making them, and inconsistent with other allegations made at the same time, and when the channel of proof is through persons pecuniarily interested in establishing the truth of the alleged admissions or declarations. We do not permit this species of evidence of itself to prove a parol contract or parol gift of lands so as to take a case out of the statute of frauds and perjuries; and the reason why it should not be permitted to invalidate a written will devising real estate, is of equal, if not greater weight.

Upon the whole case, we are of opinion that there was no revocation by Dr. Robert Mitcheltree of the will in question, and no such evidence of fraud upon the part of Mrs. Jane Mitcheltree as to prevent her from taking the estate under the will.

                                                    Judgment affirmed.

Judge BLACK was present at the argument of this case, but was not a member of the court at the time of the decision. He concurred in the judgment.