> Judgment reversed, and a *venire facias de novo* awarded.

# Johnson's Appeal.

1. The Orphans' Court in all matters within its jurisdiction, is a court of equity powers, and has as full power in the right discharge of its duties to grant relief as a Chancellor has.

2. The Orphans' Court has jurisdiction to enter a decree vacating a private sale made by a guardian under an order of court, ordering a reconveyance of the same and directing a restitution of the purchase money for gross mistake—in this case the sale of 52 acres for 200 acres,—upon the petition of the purchaser, even after the sale is confirmed, the purchase money paid, and the deed executed and delivered, where the rights of third parties have not intervened.

3. Evans *v.* Maury, 2 Amerman, 300, distinguished.

May 28th, 1886.   Before MERCUR, C. J., GORDON, PAX-SON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Warren county:* Of July Term, 1885, No. 74, setting aside a sale of real estate made by order of said court by G. C. James, former guardian of minor children of P. J. Falconer, deceased, to A. W. Grove and J. G. Dale, taken by S. P. Johnson, present guardian of said minor children.   The following are the material facts of the case:

In April, 1881, P. J. Falconer, a resident of Warren county, died intestate, seized of several tracts of wild land situate in different parts of the county, inter alia that part of Warrant No. 5234, in Limestone (now Watson) township, lying imme-diately north of and adjoining the dividing line between Warren and Forest counties—being the land in controversy— which he purchased in 1860, at Treasurer's sale for arrearage of taxes.   The treasurer's deed therefor describing it as con-taining 150 acres.

P. J. Falconer left surviving him three minor children, of whose persons and estate G. C. James, was, on June 11th, 1881, duly appointed guardian by the Orphans' Court of War-ren county.   These children were placed in the custody and under the care of Z. H. Eddy, their grandfather, with whom they still live.

As Mr. James had no knowledge of the location, character or value of the wild lands belonging to the estate, and as Mr. Eddy was familiar with the same, and an old and experienced surveyor by profession, he was employed and authorized by Mr. James to look after such lands, find purchasers therefor, and negotiate sale thereof, when he, James, would make title thereto through the Orphans' Court, and receive the purchase money.

On March 3d, 1882, W. A. Grove called upon Mr. Eddy to ascertain if the land in controversy was for sale, when Mr. Eddy informed him that it was; that it belonged to the Fal-coner heirs; that he was their agent for selling the same; that he had surveyed the tract twice; that there were 212 acres and upwards in the tract, and gave the length of the lines; that the price was $10 an acre, but that he would sell it for $2.000.

On April 6th, 1882, Dale and Grove came to Warren to make the purchase, when, for the first time, they met G. C. James, who on the following day, to-wit, 7th of April, had prepared and presented to the Orphans' Court, a petition for leave to make private sale of the land in controversy to J. G. Dale and W. A. Grove for $2,000—describing the tract as " containing two hundred acres, be the same more or less."

Whereupon the court decreed the sale to be made accordingly. On the same day, to-wit, April 7th, return of sale was made by the guardian, which was, on the same day, confirmed absolutely by the court. Neither the petition nor decree of court authorizing the sale, showed how the minors' title had been acquired, whether "by descent or last will," or otherwise; nor that it could be sold "without injury or prejudice to any trust, charity," or "violation of any law," conferring "an immunity or exemption from sale or alienation."

On the same day, April 7th, G. C. James, as guardian, executed and delivered to Dale and Grove a deed, conveying the land as described in said petition, and received the purchase money, $2,000, in full.

Prior to, and at the time of this sale to Dale and Grove, the guardian had in his possession the treasurer's deed to P. J. Falconer (which had not been recorded) for the land, and a draft of the same, which he found among Falconer's papers—both of which call for but 150 acres of land. Neither of which were shown, nor was mention made of them to Dale or Grove until some time after their purchase.

On April 7th, 1882, after receiving their deed from the guardian, Dale and Grove sold and conveyed 100 acres of their supposed purchase, subject to survey, to S. E. Brainerd and others, and on the following day, to-wit April 8th, 1882, went upon the land with F. F. Whittiken, a surveyor, for the purpose of having the 100 acres surveyed and set apart for Brainerd and others, when it was discovered by actual survey and measurement upon the ground, that the tract contained but 52 acres and 69 perches.

On the 7th day of January, 1884, Dale and Grove presented their petition to the Orphans' Court, setting out the above fact and praying the court to vacate and set aside its said decree and the said conveyance to them, upon the executing to the heirs of said Falconer a deed re-vesting said land in them, and that their guardian be ordered to refund to them either the whole of said purchase money or a ratable part thereof, and that the court should grant them such other and further relief as is just and equitable.

Johnson filed an answer denying any authority in Eddy to contract, sell or make any representations in relation to the land in controversy, and prayed that the petition of Grove and Dale might be dismissed.

The court referred the petition and answer to H. H. Goucher Esq., as Auditor, who after taking testimony and full hearing reported that the decree prayed for should be entered.

Johnson filed exceptions to this report which were dismissed

by the court, and the decree recommended was thereupon entered, whereupon Johnson took this appeal assigning for error the decree of the court.

*Parmlee, (Johnson* and *Lindsey* with him) for appellant.—We deny the power of the Orphans' Court to grant the relief prayed for and its right to interfere to help purchasers out of the consequences of their own mistakes, when the transaction, as in this instance, is completed to the last requisities of a judicial sale—the delivery of the deed, the confirmation of the sale and the payment of the whole of the purchase money.

The Orphans' Court has complete and exclusive jurisdiction of all matters placed within its sphere by the legislature, whose creature it is. By reason of the methods of proceeding in that court, and the scope of its powers when it has jurisdiction, it has been called a court of equity of limited jurisdiction, though full analogy to chancery proceedings has been denied it in several cases by this court: Brightly's Equity Jur., section, 915, 916.

Commonwealth *v.* The Judges, 4 Barr, 303; Bunker *v.* Bunker, 7 Barr, 55; Ake & Feay's Appeal, 24 P. F. S., 116; Evans *v.* Maury, 2 Amerman, 300.

We hold that this being a judicial sale to which the rule of *caveat emptor* applies, that the Orphans' Court erred in ordering its decrees abrogated and a conveyance of land cancelled. In the first place it should be remembered that it is what the courts have called a complete sale. It lacks none of the elements which have been held essential. The decree of confirmation was made, the purchase money fully paid and the deed delivered. The term at which this occurred, and many subsequent terms, passed before the petitioners began to cry to the court to help them out of their bad bargain: Leshey *v.* Gardner, 3 Watts, 314; McRee's Estate, 6 Phila., 75; Deming's Appeal, 7 Wr., 168; Fox *v.* Mensch, 3 W. & S., 446; King *v.* Gunnison, 4 Barr, 172; Kennedy's Appeal, 3 Barr, 153; Sackett *v.* Twining, 6 H., 202; Bickley *v.* Biddle, 9 C., 276; Schug's Appeal, 14 W. N. C., 49; Rorer on Jud. Sales, 161, 157–9; Rawle on Cov. for Title, 622 note.

In the case of Miles *v.* Diven, 6 W., 148, this court says that even if an administrator has made false representations as to quantity etc., before his sale, that as the purchaser had no right to rely on them, his only redress, if he did not get what he was thus led to suppose he was buying, was by application to the Orphans' Court before confirmation, to set aside the sale. See also Penn Square Building, Ass'n's Appeal, 32 P. F. S., 330; Simmonds' Estate, 7 Harris 441; De Haven's Appeal, 16 W. N. C., 37.

A bill of review could not be sustained in this case.   Green's Appeal, 9 P. F. S., 235; De Moyne's Appeal, 8 Out., 323.

*Freeman,* (*W. G. Trunkey* and *Osmer* with him), for appellees.—The Orphans' Court had jurisdiction to enter the decree complained of.   In matters within its jurisdiction, it proceeds on the same principles as a court of chancery; and it is essentially such in its proceedings and decrees, within the limited sphere of its jurisdiction :   Guier *v.* Kelly, 2 Binn., 299 ; Com. *v.* The Judges, 4 Pa. St., 301; Kittera's Estate, 17 Pa. St., page 423; Bright Eq. Jurisp. 630, Sec. 916.

Its resemblance to a court of equity consists in its practice and proceeding by petition and answer, containing the substance, but not the technical subtleties and nice distinctions of a bill in equity; by which, however, justice is obtained more conveniently, and as certainly, as in courts of equity purely so called :   Brinker *v.* Brinker, 7 Pa. St., 53, and see page 55; Bright Eq., Jurisp., 630–1, Sec. 916.

The exceptions to the conclusiveness of decrees of the Orphans' Court, therefore are, as in other courts, fraud, gross mistake or misapprehension, amounting to fraud, and want of jurisdiction :   Mitchell *v.* Kintzer, 5 Pa. St., 216 ; Jackson *v.* Summerville, 13 Pa. St., 359; George's Appeal, 11 Pa. St., 260: Milne's Appeal, 99 Pa. St., 483 ; Torrence *v.* Torrence, 53 Pa. St., 505.

Courts will relieve against mistakes resulting in injury, occasioned by the misconduct or misrepresentations of the officer conducting the sale, or even of third persons, is well settled by the current of authorities:   Schug's Appeal, 14 W. N. C. 49; De Haven's Appeal, 16 W. N. C. 37; Moulton's Estate, 12 Id., 307; Johnson's Estate, 15 Phila., 543 ; Campbell *v.* Gardner, 11 N. J. Eq., 423; Woodward *v.* Bullock, 27 Id., 507 ; Hays *v.* Stiger, 29 Id., 196; Mutual Life Ins. Co. *v.* Goddard, 33 Id., 482; Collier *v.* Whipple, 13 Wend., 224; Tripp *v.* Cook, 26 Id., 143 ; Veeder *v.* Fonda, 3 Paige Ch., 94.

That Courts of Equity have power to set aside sales made under their authority, after confirmation, payment of purchase money and delivery of the deed, on the ground of accident, misapprehension or mistake of fact, resulting in injury, has been frequently decided:   Tripp *v.* Cook, 26 Id., 143; Veeder *v.* Fonda, 3 Paige's Ch., 94; King *v.* Platt, 37 N. Y., 155; Campbell *v.* Gardner, 11 N. J. Eq., 423; Brown *v.* Elliott, 17 Id., 353 ; Kloepping *v.* Stellamacher, 21 Id., 328; Mutual Life Ins. Co. *v.* Goddard, 33 Id., 482; Heintz *v.* Bentley, 34 Id., 562; Gove *v.* Colborn, 37 Id., 319.

The rule of *caveat emptor* applies with as much, if not greater force, to contracts between individuals, as it does to

judicial sales. In the one case it is largely the folly of the purchaser, if when he has it in his power to do so, he does not protect himself by apt covenants ; whereas, in judicial sales, no covenants are given, or can be required. And yet, when a contract between individuals for the sale of land in gross, has been fully executed by payment of purchase money and delivery of the deed, where the deficiency is so great as to naturally raise the presumption of fraud, imposition, or gross mistake in the very essence of the contract, courts of equity will not enforce the rule of *caveat emptor*, but grant the pur-.chaser relief. Such is the weight of extra judicial opinion, at least : Stebbins *v.* Eddy, 4 Mason's Rep., 414, and see page 420 ; Kreiter *v.* Bomberger, 82 Pa. St., 59; Glenn *v.* Glenn, 4 S. & R., 488 ; Harrison *v.* Talbott, 2 Dana, (Ky.) page 265 ; Portman *v.* Mill, 2 Russ Ch., 570.

The power of the Orphans' Court to set aside a sale of real estate, made in pursuance of its own order, is a matter that rests within the sound discretion of the court, and its exercise, as a general rule, will not be reviewed, unless the record shows palpable and gross abuse : Bowers' Appeal, 84 Pa. St., 311 ; Haslage's Appeal, 37 Id., 440; Neeld's Appeal, 70 Id., 113.

The Orphans' Court being of statutory creation, can exercise such powers and jurisdiction over such subjects only, as are specifically conferred upon it by statute, and is therefore a court of special or limited jurisdiction ; and all facts necessary to give it jurisdiction must appear affirmatively upon the face of its proceedings, otherwise its judgments and decrees based thereon, will be treated as *coram non judice*, and consequently void : Torrence *v.* Torrence, 53 Pa. St., 505 ; Jones *v.* Jones, 12 Id., page 355; Hampton *v.* Speckengale, 9 S. & R., 212, see page 221 ; Scott Intestate Law, 366–7, and authorities cited ; 15 Am. Law Reg. (N. S.) 213, note by Judge REDFIELD ; Denning *v.* Corwin, 11 Wend. 647 ; Sm. Lead. Cas., 6th Am. Ed. vol. 1, part 2, page *816 *et seq.*

Under these decisions this sale was not only irregular but void.

Mr. Justice PAXSON delivered the opinion of the court, October 4th, 1886.

This was an appeal from the decree of the Orphans' Court, setting aside a private sale of real estate made by G. C. James as guardian of the minor children of P. J. Falconer, deceased. The sale was made under the authority and approval of the Orphans' Court; it had been confirmed, the purchase money paid, and the deed delivered to the purchasers. About two years after the sale, the purchasers presented their petition to the Orphans' Court, praying that the sale be set aside and the

purchase money refunded, by S. P. Johnson, the present guardian, who succeeded G. C. James in the said trust. The court below referred the petition to an Auditor (who is erroneously termed Examiner and Master throughout the proceedings), who, after taking testimony, reported a decree in accordance with the prayer of the petition, which report was substantially sustained by the court, and a decree made setting aside the sale. The ground upon which both the Auditor and the court below proceeded, was that there was a marked mistake in regard to the quantity of land. That there was a marked mistake, and of a very serious character, was found by the Auditor and is not denied. Indeed, the Auditor's findings of fact were accepted by both sides and are not now disputed. The land was sold as a tract of timber land, containing 200 acres, at $10 per acre. In point of fact, as found by actual survey, there were but 52 acres and some perches. No fraud in fact was imputed to the guardian in making the sale. He appears to have had no knowledge as to the quantity of land. The sale was effected by one Z. H. Eddy, who was a surveyor and the grandfather of the minor children. He professed to have measured one of the lines, and said there were 212 acres in the tract, but would sell it for 200. Eddy appears to have been a go-between; the Auditor finds he was not the agent of the guardian, and he does not appear to have been the agent of the purchasers. The latter relied upon his representations as to quantity in good faith, and did not discover the mistake until they had sold off 100 acres, when in surveying the tract in order to set off the part sold, they discovered that it contained altogether but about 52 acres. The guardian was at once notified of the deficiency and a demand made to have the mistake rectified. Some negotiation followed, resulting in nothing, when this petition was filed in the court below.

If the Orphans' Court possessed the power to set aside the sale under the circumstances, it was certainly a clear case in which to exercise it. It was so gross a mistake as to amount to a legal fraud.

The decree of the Orphans' Court restores the parties to the position they occupied before the sale. The guardian gets back the land in the condition it was when sold, and he is required to return the money to the purchasers. There is no interference with the rights of third parties. That the guardian cannot retain the money in equity and good conscience, is too plain for argument. The whole matter comes down to a mere question of the power of the Orphans' Court.

A number of authorities were cited on both sides, a few only of which have any bearing upon the case. Many of them were

applications to set aside sales before confirmation and payment of the purchase money, others were applications to set aside sales made by the sheriff. The power of the Common Pleas to set aside a sheriff's sale after confirmation, delivery of the deed and payment of the purchase money, was considered in the recent case of Evans v. Maury, 18 W. N. C., 377. In that case the application was made by the defendant in the execution, alleging a fraud practiced upon him by the purchaser at the sheriff's sale, who was also the execution creditor. The proceeding was upon a rule to show cause why the confirmation should not be opened, the sale set aside, and the deed delivered up to be cancelled. We held, for the reasons there stated, that the court could not, in this summary manner, deprive the purchaser of his property, but must be left to his remedy by bill in equity, or by ejectment. Some stress was laid upon the fact that the proceeding was summary in its nature, depriving the party of his right to a trial by jury, or of the careful consideration of the case which would follow a bill in equity and a reference to a Master, in both of which forms of procedure the whole proceedings could be reviewed in an orderly manner by this court. The further reason was given, that after the confirmation of the sale, delivery of the deed, and payment of the purchase money, the matter was ended, and the court lost its grasp of the case. The parties and the subject matter were out of court. Moreover, there was no pretence that a fraud had been practiced upon the court. Under such circumstances, to bring a party into court by no other process than a rule to show cause; and upon such a rule to wrest from him his title to real estate seemed to us an unwarranted exercise of power.

It requires but a moment's consideration to see that the facts of that case have but little analogy to the case in hand: In Evans v. Maury, the proceeding was upon the common law side of the court, and were completed; neither the parties, the subject matter nor the fund were in court, which, without any fraud practiced upon it had given final judgment, and in effect dismissed the parties without day. In the case in hand, the proceeding was not in the form of a rule to show cause, but was a petition in the Orphans' Court; a court which, in its limited sphere, is a court of equity powers, and in all matters within its jurisdiction has as full authority to grant relief as any chancellor ever had. It was proceeded in, precisely as if a bill had been filed on the equity side of the Common Pleas. There was the petition, which in the Orphans' Court is the equivalent of a bill in equity in the Common Pleas; there was an answer, and a reference to an Auditor to find the facts, and if desired, an issue might have been demanded and sent to the

Common Pleas for trial. So that, so far as the form of proceeding is concerned, it differs in no essential degree, from a bill in equity filed in the Common Pleas. No one doubts that relief could have been given in such a case in the latter form of proceeding.

Moreover, the Orphans' Court still retains its grasp over the guardian and the fund. Both are absolutely within its control. The purchase money for this land was paid to the former guardian and is now held by the present guardian. If he cannot retain it in equity and good conscience, who is better fitted to say so than the court which controls both the guardian and the fund? It would be a lame conclusion to refer such a question to a Common Law Court, or to another court of equity, whose equity powers in this particular matter are no greater than those of the Orphans' Court itself. We must not lose sight of the fact that it is the purchasers who invoke the action of the Orphans' Court. They come into court and tender back the deed or a re-conveyance of the property, and ask to have a palpable error corrected, by which they have been obliged to pay a considerable sum of money for which it is admitted they have received no consideration. Surely the guardian, who acts under the control of that court, has no standing to object to its jurisdiction in a matter which affects the execution of the trust, and the disposition of the funds in his hands. We are not embarrassed by the possible case of a purchaser who has paid his money and received his deed, and who objects to his property being wrested from him by that court.

The precise point involved has not been ruled in this state. Perhaps the nearest approach to it is George's Appeal, 12 Penn St., 260, where it was held that a bill of review, to correct a clear mistake in fact, on which a decree in partition was made, will lie more than three years after the decree, purchasers not having become interested in the estate. It was said in that case by Justice BELL: "It must be admitted that a Court of Chancery would not in a case like this, entertain a bill of review; for here is neither suggestion of new matter discovered since the decree published, nor the averment of error apparent upon its face, one of which is said to be necessary to found such a prayer: 2 Madd, Ch. 537; Wilson *v.* Webb, 2 Cox, 3; O'Brian *v.* O'Connor, 2 Ball & Beatty, 154; nor can the decree complained of be regarded as wholly against the complainant, a feature also essential to a review in equity: Glover *v.* Partington, 2 Freem., 182; 3 Ch. Ca., 51. But when it is shown that an injurious mistake exists, though in part ascribable to the party averring it, we do not think the Orphans' Court ought to be deterred from its correction by the sole fact

that it is not apparent in the unassisted record. . . .. . In regard to the subject more immediately before us, we have recently had occasion to observe, more than once, that the Orphans' Court has from the beginning exercised the power of reviewing and modifying its proceedings and decrees, as an authority necessarily inherent and essential to the right discharge of its duties. On this point no statutory direction was given till the Act of October, 1840, which, however, is confined to reviews of alleged errors in the settled account of executors, administrators and guardians. This limits the period within which a review may be had in such cases to five years, but it leaves untouched the pre-existing practice in all other instances. Being thus unrestrained by the written law, I see no objection to the liberal exercise of the right to re-hear and redress for the correction of manifest mistakes, involving injury, tempered however, by the application of a sound discretion, seeking to protect the rights of third persons, and which in most cases, would dictate a refusal to interfere when the relative position of the original parties was materially changed, or the interest of third persons might be put to hazard."

The petition in this case is in the nature of a bill of review, a proceeding which it is believed the Orphans' Court has ample power to entertain. As was observed by Justice BELL in George's Appeal, above cited, the power of reviewing its decrees had been exercised by the Orphans' Court prior to the passage of the Act of 1840; the object of said Act was to limit the exercise of this power to five years in certain cases, but it leaves untouched the pre-existing practice in all other cases: See also, Dowing's Estate, 5 W., 90; Brigg's Appeal, 2 Id., 91; Clauser's Estate, 1 W. & S., 215; Stover's Appeal, 3 Id., 154; Bunting's Appeal, 4 Id., 469; Pennypacker's Appeal, 14 Pa. St., 430.

In the recent case of Milne's Appeal, 99 Pa. St., 483, it was said by our brother GORDON that: "We have no doubt about the power of the Orphans' Court to review and correct its former adjudications, if in those adjudications it discovered a palpable mistake, produced either by its own inadvertence or by the blunder of the parties. A sense of fair dealing and justice would be authority enough, in the absence of any other, for so holding. Nevertheless, other authority will be found, and that directly in point in George's Appeal, 2 Jones, 260, where the subject is so fully discussed, that further argument from us is unnecessary." This language is applicable here. It is no answer to this to say that Milne's Appeal was a bill of review under the Act of 1840, to correct an error in a previously confirmed administration account, for the Act of 1840, as before observed, did not confer a new power upon the Or-

phans' Court; it merely gave a bill of review as a matter of right in certain cases, and limited the time within which it might be exercised in those cases.

We are of opinion that the Orphans' Court had ample power to make the decree complained of. We also think it was not only justified upon the merits, but that it was required by the principles of common honesty. It would be a reproach to the law were it to fail to correct such a mistake as is disclosed by this record.

We desire to say also, in order to avoid misapprehension in the future, that it is at least doubtful whether the petition filed in this case upon which the sale was had, sets out sufficient facts to give the court below jurisdiction. It is admitted that the petition was filed under the Act of 1853. Indeed I do not know of any other act which gives the Orphans' Court the power to order a private sale of the real estate of a minor. Said Act provides: "In all cases when real estate shall have been acquired by descent or last will, the Orphans' Court, and in all other cases, the court of Common Pleas of the respective counties of this commonwealth, shall have jurisdiction to decree the sale of . . . . such real estate." The petition in this case is of the most informal character, and does not set out any explanation of the title, nor is there even an averment that the title of the minors was derived by descent or last will, which is absolutely essential to give the Orphans' Court jurisdiction. Such a loose way of dealing in matters affecting the title to real estate is not to be commended, and may lead to serious trouble hereafter.

<div style="text-align: center;">

The decree is affirmed and the appeal dismissed at the costs of the appellant.