## Hoffner's Estate. Anderson's Appeal.

*Will—Prior will—Implied revocation by inconsistency.*

While a second will which fails ·because of defective execution does not revoke a legacy in a former will in harmony with that in the one which fails, yet where the residuary clause is different there is a fatal inconsistency which operates as a revocation.

*Will—Religious use—Act of April 26, 1855.*

A gift to a religious use made in a will executed two days before the death of testatrix cannot be sustained, under the act of April 26, 1855, P. L. 332, although the gift was identical with one made four years before in a codicil to a former will, and the later will contained no words of revocation.

*Equity—Trust—Gift in pursuance of promise.*

A gift to a religious use made in a will executed within thirty days of testatrix's death will be sustained where it appears that the gift was made in pursuance of a promise given to one who bequeathed her whole estate to testatrix on the express understanding that such a gift should be ·made.

The money goes to the church, not by the will, but because there was no valid will when there ought to have been one ; it is a right of the church, for whose benefit the promise was made, to insist on the fulfillment of the obligation in a court of equity in whose hands is the fund and before whom are all parties in interest. By MR. JUSTICE DEAN.

*Statute of limitation.*

Where such promise was made in 1883, to be performed after the death of the promisor in 1888, and the adjudication in the orphans' court was made in 1893, the statute of limitations will not bar the claim.

MR. JUSTICE MITCHELL filed a dissenting opinion.

Argued April 6, 1894. Appeal, No. 313, Jan. T., 1894, by Rachel C. Anderson, from decree of O. C. Phila. Co., April T., 1893, No. 128, distributing estate of Prudence Hoffner, deceased. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Affirmed.

Exceptions to adjudication of executor's account.

The adjudication was as follows by PENROSE, J.:

" The decedent died May 26, 1892. By her will, proved June 7, 1892, she gave $1,000 to the ' trustees of St. John's English Evangelical Church of Philadelphia, in trust that they shall safely invest the same and apply so much of the in-

terest and income arising therefrom as may be necessary to keep in perfect repair the burial lot and stones therein of my late husband, Charles B. Hoffner, in North Laurel Hill Cemetery, if any part of said income should not be necessary for that purpose, it may be used for the benefit of the Church;' her house and lot on Perkiomen street, Philadelphia, to her niece, Rachel C. Anderson, for life, and at her death to her issue if she should leave any surviving her, and in default of such issue then to St. John's English Evangelical Lutheran Church of Philadelphia; her family clock to L. R. Baldwin; her clothing, bedding, etc., to her niece, Rebecca W. Sparks; and the residue of her estate to her niece, Rachel C. Anderson, daughter of Rebecca W. Sparks.

"This will was executed May 24, 1892, two days before the death of the testatrix, and hence, it was claimed on behalf of the residuary legatee, the gifts to the Lutheran Church were avoided by the act of April 26, 1855, and the property so given fell into the residue.

"There was a prior will, dated December 1, 1882, a codicil to which, executed April 12, 1888, provided as follows: 'I give and bequeath the sum of $1,000 to the trustees of St. John's English Evangelical Lutheran Church of Philadelphia, in trust that they shall safely invest the same and apply so much of the interest or income arising therefrom as may be necessary to keep in perfect repair the burial lot and stones therein of my late husband, Charles B. Hoffner, in North Laurel Hill Cemetery; if any part of said income should not be necessary for that purpose it may be used for the benefit of the church.

"'I give and bequeath the sum of $300 to the Endowment Fund of the Orphans Home and Asylum for the aged and infirm of the Evangelical Lutheran Church; located in Germantown, Philadelphia.

"'I give and bequeath the sum of $300 to the Theological Seminary of the Evangelical Lutheran Church, now or soon to be located at Mount Airy, Philadelphia.

"'I give and devise my house and lot on Perkiomen street, Philadelphia, to Rachel Anderson during her natural life, if she leaves legal issue surviving her then I give and devise the said house and lot to said issue; but if she leaves no legal issue sur-

viving her then I give and bequeath and devise the said house and lot to St. John's English Evangelical Lutheran Church of Philadelphia.

" 'I give and bequeath the large family clock formerly belonging to Elizabeth B. Hoffner, to our friend and physician, L. R. Baldwin, now of 1900 Wallace street.

" 'All of the above and foregoing bequests are to be in memory of my sister-in-law, Elizabeth B. Hoffner, who died February 12, 1888, in the 95th year of her age.'

" It will be observed that the language of the provisions in the will of May 24, 1892, relating to the Evangelical Lutheran Church, is identical with that of the codicil thus executed four years before; and the will contains no words of revocation.  It reiterates all of the provisions of the codicil of the former will except the legacies of $300, each to the Orphans' Home and the Theological Seminary, both of which, as the evidence shows, were paid by way of anticipation, May 20 and May 21, 1889.

" The codicil itself, as the evidence further shows, was executed in performance of a contract or a fiduciary obligation growing out of the circumstances attending the execution of a will in her favor by her sister-in-law, Elizabeth B. Hoffner, in whose memory, as the codicil states, the gifts were made.  The will of Elizabeth B. Hoffner, which gave her entire estate to the present testatrix, was executed May 30, 1883.  It was prepared by Mr. Vail, who was one of the subscribing witnesses.  She had intended to give $1,000 to St. John's Lutheran Church, but concluded afterwards that her whole estate should go to her sister-in-law.  What occurred after the signing of the will is thus narrated by Mrs. Colladay, an intimate friend, whose testimony was not contradicted in any particular: ' Mr. Vail was there; after he went away Miss Elizabeth felt very despondent, and Prudence asked her what the matter was.  She said, " I am sorry for what I have done."  Mrs. Hoffner said, " What are you sorry about?"  She said, "I wanted that to go to the Church."  Prudence said, " Elizabeth, I give you my word, if you tell me what you want done with that, I will put it where you want it," for, she said, "I will never use it."  Those two ladies just lived together.  Prudence assured her she would carry out her wishes in regard to St. John's Lutheran Church, and also to the Lutheran Home, and the Lutheran Seminary.'

" Mr. Vail testified as follows·: ' Very soon after Miss Hoff-
ner's death, Mrs. Hoffner and I think Mrs. Colladay came to
have a codicil put to her will.   At that time it was not known,
I think, how much she had, and she ·gave in that codicil $1,000
to St. John's Church, $300 to the Lutheran Home, and $300 to
the Seminary, she thinking that Elizabeth had left her $1,600,
besides the house and her interest during life to Rachel Ander-
son, and after her death, if she left no children, to St. John's
Lutheran Church.   When I came to find out for Mrs. Hoffner
how much property Elizabeth had left her, I found there were
two bonds; one of $700 and the other of $600.   The $600 was
paid off, and I don't know who came with her, I don't know
whether it was Mrs. Colladay or not, who came to my office and
directed me, for her, to pay that $600 to the Lutheran Seminary,
and that was given ; so that she then had from Elizabeth Hoff-
ner's estate only the $700 bond, and all she had received
from Elizabeth Hoffner's estate is the $700 bond.   She also
got the house.   You will find that I just scratched off the re-
ceipt received from the treasurers of the Home, that it was re-
ceived by them during her lifetime.   Q. In performance of
her obligation to Elizabeth, she made a codicil of that sort and
subsequently paid, during her lifetime, two of the legacies ?
A. Two of them.   But the only trouble was there was not
enough of Elizabeth's estate to pay the whole of $1,600.   She
always told me she intended giving all of Elizabeth's estate
to the Lutheran charities, but she gave $300 more than she
got from Elizabeth's estate.   But the real estate also belonged
to Elizabeth's estate.   Prudence has given that in her will to
her niece during life, and after her niece's death, to her chil-
dren if any, and if not to St. John's Evangelical Lutheran
Church.   The will makes no change, but it really abrogates a
lot of legacies which had not been in her own will.   She also
makes a change in her residuary legatee.   She had given to
Rebecca W. Sparks; now she gives it to Rebecca W. Sparks'
daughter.   She had very little property of her own, outside of
what she got from Elizabeth.   She ought to have had more,
but when I came to look for it, I could not find it.'

" No will in writing is repealed, nor is any provision therein
altered otherwise than by some other will or codicil in writing,
or other writing declaring the same, executed and proved in

the same manner, or by burning, canceling or by obliterating or destroying the same by the testator himself, or by some one in his presence and by his express direction: Act of April 8, 1833, sects. 13, 14. In the present case, the will of May, 1892, contains no words of revocation, and it therefore only revokes the prior testamentary interest so far as its provisions are inconsistent with them: Teacle's Estate, 153 Pa. 219; Price v. Maxwell, 28 Pa. 23. Of course, if, as in Price v. Maxwell, the original will gives property specifically for a designated charity, while the second will contains a general gift to the same object and appoints different executors, there is a manifest inconsistency and the original will is revoked, pro tanto. But here the gifts in the will, so far as they relate to the charity, are in the very words of the codicil to the original will. There is simply a republication, and the actual gift takes effect, so far as the question of validity as affected by the act of 1855 is concerned, as of the date of the execution of the codicil. In principle there is no difference in this respect between the case under consideration and that presented in Carl's Appeal, 106 Pa. 635, where the will was republished by a codicil executed within the prohibited time. The act of assembly provides that 'No estate, real or personal, shall hereafter be bequeathed, devised or conveyed in trust for religious or charitable uses except the same be done by deed or will, at least one calendar month before the decease of the testator or alienor;' and here the gift was by a codicil, not revoked, executed four years before such death. Neither the letter nor the spirit of the act is transgressed by sustaining the legacy.

"How far the result would have been changed if the will which reiterates the original gift had contained an express revocation of former wills, is a question which need not be considered. In England and in some of the states of the United States, under what is called the 'doctrine of dependent relative revocations,' an express revocation, if only subservient to another purpose, for which it is incompetent, shall not revoke: Ilchester's Case, 7 Ves. 379. Hence where lands were devised and afterwards a second will was executed devising the land to the same person, with a variation only in the name of one of the trustees, and the second will was not good because not executed in presence of the requisite number of witnesses as required by

the statute of frauds, it was held there was no revocation: Onions v. Tyrer, 1 P. Wms. 343.   See, also, Williams on Executors, 185, 222, etc.

" But the gift is further to be maintained because it was made in compliance with a duty on the part of the testator arising from her promise to the original owner from whom she acquired the property, a duty which would have been enforced in equity had she not voluntarily performed it.   It is well settled that if by the promise of an heir or residuary devisee or legatee the ancestor or testator is induced to make no will or to leave that which he has made unchanged, the heir or devisee or legatee will be regarded as a trustee for the person in whose favor the will would have been made or changed but for the promise which prevented it: Barrow v. Greenough, 3 Ves. 152; Byrn v. Godfrey, 4 Ves. 10; Hoge v. Hoge, 1 Watts, 163; Gaullaher v. Gaullaher, 5 Watts, 200; Church v. Ruland, 64 Pa. 432; Socher's Appeal, 104 Pa. 609; Brooke's Appeal, 109 Pa. 188; Perry on Trusts, sect. 181 et seq.; Story's Eq., sects. 252, 256, etc.   It cannot be doubted in this case that, but for the assurances on the part of Mrs. Hoffner, the sister-in-law would have changed the will giving everything to her, and have thus carried out her original intention of giving directly to the charity. An obligation thus created could not be defeated by the act of the party bound in deferring the execution of the trust until so late a time that the act of assembly, if he were dealing with his own property, would make such execution invalid.

" After all, however, it will be observed that the gift in question is only charitable so far as concerns the surplus income, if any remain after the burial lot and gravestones have been kept in repair; non constat that there will be any surplus.

" The auditing judge is of opinion that the residuary legatee cannot have any benefit by reason of the act of 1855.

" It is proper to add upon the question of the trust as between Mrs. Hoffner and the original owner, Elizabeth B. Hoffner, that the fact that the personal property was less than the sum which the former undertook to give to the charities is immaterial in view of the further fact that there was real estate more than sufficient to make up the deficiency."

Exceptions alleged error as to revocation, as to trust, as to jurisdiction, statute of limitations and distribution.

Exceptions dismissed for reason given by auditing judge, in opinion by HANNA, P. J.

*Errors assigned* were substantially as in the exceptions.

*Richard C. McMurtrie, Wm. H. R. Lukens* with him, for appellant.—The bequest was a perpetuity and void.

If the gift was a charitable use under act of May 26, 1891, P. L. 119, it was void under the act of May 26, 1855, P. L. 332.

The gift is void for uncertainty: Kelly v. Nichols, 21 Atl. R. 906; Chapman v. Brown, 6 Ves. 404; Fowler v. Fowler, 33 Beav. 616; Taylor v. Freeman, 58 L. T. (N. S.) 538; Limbrey v. Gurr, (6 Madd.) 151; Attorney General v. Hinxman, 2 J. & W. 270; Cramp v. Playfort, 4 K. & J. 479; Jarman, Bigelow's ed., p. 327, et seq.

The court must not confound cases where probate is unnecessary, as in ejectments, nor where the contest is for probate. What is before this court is, a bequest that is void, and the adjudication is under a will never admitted to probate. Can a court look at a will that has not been admitted to probate to ascertain a testamentary intent as to a legacy? There can be but one answer to this question. In ejectment such a paper was admitted: Hays v. Hardin, 6 Pa. 409. But as to the personalty the probate is the conclusive decree: Coates v. Hughes, 3 Bin. 498; Allen v. Dundas, 3 T. R. 125.

A prior will is not revoked by a subsequent will merely. This is the proposition relied on, but it is only true if the two can stand together. In plain words, a will is not revoked by a subsequent will until the latter will supersedes the former, not merely in intention but in effective operation. But a residuary clause in the second carries what fails of any bequest, and leaves no room to let in a prior will. It cannot matter whether the property passes by one or the other clause of a later will on the question whether that gift is inconsistent with a gift by a prior will: Rudy v. Ulrich, 69 Pa. 183; Price v. Maxwell, 28 Pa. 39; Teacle's Est., 153 Pa. 224.

That the claim is not one of a testamentary character is shown by the first case in the reports, Chamberlaine v. Chamberlaine, 2 Freem. Ch. 34, where the promise was enforced regardless of the value of the assets obtained by the promisee. The same

thing will be seen in Chamberlain v. Agar, 2 V. & B. 262, if carefully read, for there was a paper which might be said to be testamentary.

Was there a trust ex maleficio? A single witness proves a promise. But what was the promise? It certainly was not a promise to do what the court enforced. If it was a promise it was one not performable by will. The jurisdiction was in equity: Barrow v. Greenough, 3 Vesey, 154.

If this was a constructive trust the statutes bar it.

*John G. Johnson*, *J. H. Wolfe* with him, for appellee.—Appellant is of the opinion that a bequest of the income of a fund to keep a tomb in repair is a perpetuity. It has not been so decided in Pennsylvania. A trustee can be appointed under the act of May 16, 1891, P. L. 88.

Where a legatee receives property from a testator, under a promise to do something in relation thereto, upon the faith of which the will was made, or one already made was not altered, the promise is legally binding: Brooke's Ap., 109 Pa. 188; Gaullagher v. Gaullagher, 5 Watts, 201; Hoge v. Hoge, 1 Watts, 214; Hodnett's Est., 154 Pa. 489; Dreer v. Penna. Co., 108 Pa. 226.

The statute of limitations certainly does not apply. It is true that the promise was made in 1883, or 1884, to Elizabeth B. Hoffner, at about the time her will was made. It was a promise, however, to do something after the death of the promisee, which did not take place until Feb. 12, 1888. The adjudication in this case was filed May 10, 1893, within six years of the first date at which the promise could possibly have been enforced.

OPINION BY MR. JUSTICE DEAN, April 30, 1894:

Prudence Hoffner, the testatrix, died May 26, 1892. On the 24th of May, two days before her death, she made her will, which was duly admitted to probate June 7, 1892.

The facts, either not disputed or found by the orphans' court, were these: Prudence Hoffner, the testatrix, was the aged childless widow of Charles B. Hoffner, who died some time before the year 1882. After his death, the widow and her husband's sister, Elizabeth B. Hoffner, lived together. The sister was

possessed of a small estate consisting of a house and lot in Germantown, worth about $1,400, and personal securities of about the same value ; she was much older than her brother's widow, being at her death in 1888 in her 95th year.   On May 30, 1883, Elizabeth made her will, in which she gave her whole estate to her sister-in-law, this testatrix, and after her death in 1888, on probate of the will, Prudence took the estate devised and bequeathed to her.   Elizabeth had intended to give $1,000 to St. John's Lutheran Church, and $300 to each of two other church institutions, but, when she came to execute her will, bequeathed her entire estate to Prudence ; then she apparently regretted the neglect of her church, and was troubled in mind because of it ; on this becoming known to Prudence, she more than once assured Elizabeth, in most significant language, that she would carry out her wishes with regard to the bequest to the church, and also as to two smaller gifts of $300 each to the Lutheran Home and Lutheran Seminary.   The orphans' court finds as a fact that : " It cannot be doubted in this case that, but for the assurances on the part of Mrs. Hoffner, the sister-in-law would have changed the will giving everything to her, and have thus carried out her original intention of giving directly to the charity."   Although Elizabeth survived nearly five years, no change was made in her will, and about all the property Prudence had at her death came to her under this will.   After the death of Elizabeth in 1888, Prudence manifested, by a codicil to a will already made by her, an intention to fulfill her promise to Elizabeth by bequeathing $1,000 to St. John's Church, and $300 each to the Lutheran Home and Lutheran Seminary ; then follow a number of other bequests, concluding with this declaration : " All of the above and foregoing bequests are to be in memory of my sister-in-law, Elizabeth B. Hoffner, who died February 12, 1888, in the 95th year of her age."   On May 20 and May 21, 1889, she paid the intended legacies of $300 each to the Home and Seminary.   She made no change, however, in the disposition of her estate as directed in the codicil until two days before her death, on May 24, 1892, when a new will was executed, disposing of her whole estate, only the second, third and sixth items of which will are important in this contention.   The second is as follows :

" Second : I give and bequeath the sum of one thousand dol-

lars to the trustees of St. John's English Evangelical Lutheran
Church of Philadelphia, in trust, that they shall safely invest
the same, and apply so much of the interest or income arising
therefrom as may be necessary to keep in perfect repair the
burial lot and stones therein of my late husband, Charles B.
Hoffner, in North Laurel Hill Cemetery, if any part of said in-
come should not be necessary for that purpose, it may be used
for the benefit of the church.

" Third: I give and bequeath my house and lot situate on
Perkiomen street, Philadelphia, to Rachel C. Anderson during
her natural life. If she leaves legal issue surviving her, then
I give and devise the said house and lot to said issue. But if
she leaves no legal issue surviving her, then I give, bequeath
and devise said house and lot to St. John's Evangelical Luth-
eran Church of Philadelphia.

" Sixth: I give and bequeath all the rest, residue and re-
mainder to my niece, Rachel C. Anderson. But if she is dead,
then to her children or to such persons as she may have di-
rected."

Lewis D. Vail, Esq., was appointed executor of the will, and
filed his account, showing a balance for distribution to legatees
of $1,028.49. On distribution by PENROSE, auditing judge,
the residuary legatee, Rachel C. Anderson, contended that the
bequest of $1,000 in the second item having been made for a
religious use " within one calendar month before the decease of
testator," it was avoided by the act of 26th of April, 1855, and
by the same act went to her as residuary legatee. Her claim
was disallowed. The auditing judge was of opinion that, as
the will of May 24, 1892, contained no words of revocation, it
only revoked the codicil of April 12, 1888, so far as its provis-
ions were inconsistent with those of the codicil; and that the
latter will, so far as concerned the legacy in the second item,
being identical with those words making the same gift in the
codicil, as to that part, was only a republication of the codicil,
and the actual gift took effect as of the date of the codicil, there-
fore is not avoided by the act of 1855. He further held that,
on the facts as found by him, the gift was good, because made
in fulfillment of a promise to the original owner, Elizabeth
Hoffner, through which promise testatrix acquired the prop-
erty ; that thereby she incurred an obligation which equity

would have enforced, had she not voluntarily performed it. He therefore directed the payment of $1,000, as bequeathed in the second item of the will, subject to the collateral inheritance tax, and the remainder, if any, to the residuary legatee. On exceptions being filed by this appellant, they were overruled by the orphans' court, and the report of the auditing judge confirmed for the reasons given by him. From that decree, the residuary legatee appeals to this court.

We think the orphans' court was in error in holding that as the legacy in the second item was identical with that in the codicil, the will as to that bequest was a mere republication of the codicil, and as the bequest in the will was inoperative only because of the act of 1855, the codicil was effective. While not questioning the rule that a second will which fails because of defective execution, does not revoke a legacy in a former will, in harmony with that in the one which fails, yet here in the codicil containing the bequest in supposed harmony, there was no residuary clause; the residuary legatee in the will of 1882, to which the codicil was appended, was another than the one named in the will before us. The first will and codicil were, therefore, fatally inconsistent with the last one. But, independent of any rule of construction, the act of 1855 does not permit us to seek for a legatee under some former will made more than a calendar month before death. If the bequest here is invalid, it is because the statute so declares, and for no other reason; if for that reason, then the same statute declares where it shall go, " to the residuary legatee or devisee." That would give it to this appellant, the residuary legatee, unless the claim of the church can be sustained independent of the void will.

But the second proposition on which the distribution to the church is sustained, compels assent. The court below says:

" But the gift is further to be maintained because it was made in compliance with a duty on the part of the testator, arising from her promise to the original owner, from whom she acquired the property, a duty which would have been enforced in equity, had she not voluntarily performed it. It is well settled that if, by the promise of an heir or residuary legatee, the ancestor of testator is induced to make no will or to leave that which he has made unchanged, the heir or devisee or legatee will be regarded as a trustee for the person in whose favor the will

would have been made or changed but for the promise which prevented it."

Or perhaps the rule may be more concisely stated from an older authority than those cited: "Whatsoever ye would that men should do unto you, do ye even so unto them." When one procures from another a gift of the whole of that other's estate, on a promise to give part of it at death for a special purpose, or to a particular individual, the fullfilment of the promise will be enforced in a court of equity, because to the moral obligation there is added the force of a legal one; the estate of the donor is parted with on the faith of the promise. Although there was an absence of all fraud on the part of Prudence Hoffner in obtaining this estate, it was none the less a trust.

The court has found as a fact that the entire property of Elizabeth was obtained by Prudence, upon an express promise to give this $1,000 to the church. Without such promise, Elizabeth, having full power so to do, would herself have directed the disposition of it. There is no exception to this finding of fact by appellant. If equity would declare and enforce a trust thus created, as the authorities from Hoge v. Hoge, 1 Watts, 163, followed by many others, cited by the court below, abundantly show it would, why should it not be declared and enforced on a distribution of the trust estate in the orphans' court? The fund for distribution is the same that passed from Elizabeth to Prudence on the faith of the promise; the promise was recognized by Prudence in the codicil of April 12, 1888, made soon after the death of Elizabeth; she again acknowledged it in this will, which fails of effect through no fault of hers. She acknowledged it in the payments during life to the Home and Seminary. But the promise remains in respect to the $1,000 in all its binding moral and legal force, although this particular method of performing it is invalid.

It is argued, the orphans' court is without jurisdiction in such a case. If that be correct, it is powerless to make distribution of a fund to and among those entitled to it. But that court is a court of equity, and has as full power as a chancellor to grant relief within its jurisdiction; and its jurisdiction is over the estates of decedents: Johnson's Appeal, 114 Pa. 132. It has power to determine whether a parol trust has been created as to a fund before it for distribution : Lowry's Appeal, Ibid. 219

This money goes to the church, not by the will, but because there is no valid will, when there ought to have been one; it is a right of the church, for whose benefit the promise was made, to insist on the fulfillment of the obligation in a court of equity, in whose hands is the fund and before whom are all parties in interest.

Nor does the statute of limitation bar the claim. The promise was made in 1883, to be performed after the death of Elizabeth, which occurred 12th of February, 1888; this adjudication was had 10th May, 1893, within the statutory period.

We are of opinion that the adjudication of the orphans' court for the reasons stated by us should be affirmed; therefore the appeal is dismissed at costs of appellant.


DISSENTING OPINION BY MR. JUSTICE MITCHELL:

I am unable to concur in this judgment. It is conceded that it cannot be sustained on the opinion of the learned court below. The two wills cannot stand together, and the prior one was therefore revoked. The mere fact of the identity of the bequest in contention here with that in the codicil of 1888, will not save the latter, nor give it a present standing as of the date when it was written. The codicil was revoked with the rest of the will, and the bequest must stand or fall with the will of 1892. As a part of that, it is clearly in violation of the act of 1855. Such I understand to be the opinion of the court.

But it is thought that the bequest can be sustained in equity, as a compliance with a moral obligation to pay the consideration on which the testatrix received certain property under her sister-in-law's will. This is putting it in the strongest possible way, a way that I do not think the evidence justifies, and that I could not concede except as a mere step in the argument. But so conceding it, the conclusion does not seem to me to follow, because the statute plainly and peremptorily prohibits the payment of moral obligations in that way. It is probable that very few bequests are made to churches or religious uses except under a feeling of moral obligation for benefits received, either spiritual or temporal or both. The law recognizes such bequests as valid, but requires them to be made when the judgment is clear, and the obligation is not sharpened or exaggerated by the terrors of impending death. To allow such a

bequest, made within the prohibited time, to be sustained by calling it an obligation which equity would have enforced, is simply to evade the statute. I do not understand that equity, even under the benign administration of the longest footed chancellor, undertakes to enforce moral obligations in the length and breadth of the Golden Rule, and it is important that we should keep its boundaries carefully marked. The bequest of Prudence Hoffner to the church was either a voluntary gift, or the performance of a legal obligation. It was put in the form of a gift, and in that form it was peremptorily made void by statute. If it was to be enforced as an obligation, the church should be required to file its bill, prove the consideration, the contract or trust, and the failure to perform, as in other cases. Then we should have the case freed from the confusion of moral and legal obligations, and without the danger of sanctioning a violation of the statute under the guise of enforcing a duty.

I am therefore of opinion that the bequest, at least as to the surplus income going to the church after maintenance of the burial lot, was void under the act of 1855. Whether any part of it was valid under the act of May 26, 1891, P. L. 119, I express no opinion about, as my brethren have not thought the act of 1891 applicable to the case.