## Kress's Estate.

*Guardian and ward—Bonds—General bond—Special bond on sale of real estate—Default of guardian—Liability of sureties.*

Where a guardian enters a general bond at the time of his appointment and subsequently enters a special bond with different sureties to secure the proceeds of the minor's real estate which he had been ordered to sell, and thereafter the guardian dies insolvent and his

executors are wholly unable to state an account showing what disposition had been made of either of the funds or any part of them, the sureties on the special bond have no reason to complain if the orphans' court decrees, on equitable principles, that each fund should be considered short proportioned to its original amount, and that the respective bondsmen should make up the amount of the deficiency according to those proportions. Such a decree relieved the sureties on the special bond of a liability which, if enforced according to the letter of the law, might have resulted in the payment by them of a still larger sum.

Argued April 10, 1912. Appeal, No. 39, April T., 1912, by Julius Eicher and Henry Graf, from decree of O. C. Allegheny Co., April T., 1905, No. 53, against sureties in Estates of Bertha and Lillian Kress, Minors. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Exceptions to adjudication. Before MILLER, J.

From the record it appeared that in 1890, Frederick Ruoff was appointed guardian of the estate of Bertha and Lillian Kress, minors, and that he then filed his bond for $5,000, with Matthias Weiss and Jacob Buescher and sureties. Subsequently the guardian was directed by the orphans' court to sell certain real estate of the minors, and he then entered a special bond for $1,400 with Julius Eicher and Henry Graf as sureties. The proceeds of the real estate amounted to $666.

The guardian died on February 7, 1904, insolvent. He owed the minors the sum of $1,964.53; of this sum $948.16 was paid over to the minors, leaving a balance due of $1,082.30, with interest from April 14, 1905.

The funds had been so merged that it was not possible to determine the identity of the portions misapplied.

The court entered the following decree:

And now, May 5, 1911, it appearing that there is due from the former guardian, Frederick Ruoff, deceased, the sum of $1,082.30, with interest thereon from April 14, 1905, a total of $1,475.33, of which $1,011.81 is personalty

and $463.52, the proceeds of the sale of realty, it is ordered, adjudged and decreed that Matthias Weiss and William Buescher, executor of Jacob Buescher, deceased, sureties on the personal bond of Frederick Ruoff, former guardian, deceased, pay the sum of $1,011.81, and that Julius Eicher and Henry Graf, sureties on the bond of Frederick Ruoff, deceased guardian, for the sale of realty, pay the sum of $463.52; said payments to be made to T. P. Trimble, Esquire, attorney in fact for Bertha Kress and Lillian Kress Underwood, the former minors, unless an appeal be taken from this decree within twenty days.

*Error assigned* was the decree of the court.

*Andrew G. Smith,* with him *Saul Schein,* for appellants, Julius Eicher and Henry Graf, cited: Hughes' Account, 22 Pitts. Leg. J. 121; Hart v. Stribling, 21 Fla. 136.

*Frank C. Osburn,* for William Beuscher, executor of Jacob Beuscher, deceased, cited: People v. Huffman, 182 Ill. 390 (55 N. E. Repr. 981); Com. v. Hilgert, 55 Pa. 236; Com. v. American Bonding & Trust Co., 16 Pa. Superior Ct. 570; Com. v. Gilson, 8 Watts, 214; State v. Harbridge, 43 Mo. App. 16; Robinson v. Millard, 133 Mass. 236; Bunce v. Bunce, 65 Iowa, 106 (21 N. W. Repr. 205); Morris v. Cooper, 35 Kan. 156 (10 Pac. Repr. 588); Warwick v. State, 5 Ind. 350.

*E. C. Chalfant,* with him *T. P. Trimble* and *Arthur L. Over,* for appellee.

OPINION BY HEAD, J., October 21, 1912:

One Ruoff was duly appointed guardian of Bertha and Lillian Kress, minors. He thereupon gave the usual bond required by law of guardians at the time of their appointment. As a result of his appointment he received into his hands a considerable sum of money, the property of his wards. Later on he applied to the orphans' court for an

order to sell the interests of his wards in certain real estate and was thereupon required to file an additional and special bond conditioned in the manner prescribed by the statute in such cases. The order was granted, the sale was made and confirmed, and the guardian received into his hands $666, the purchase money. Upon the bond last mentioned the present appellants became sureties.

It appears from the findings of the learned orphans' court, and is not denied, that the guardian so mingled the two funds by him received with each other and with his own money, that, upon his death some time afterwards, it was absolutely impossible for his executors to ascertain what disposition he had made of either of the funds or any part of them. They filed an account showing that the entire indebtedness of the guardian to his wards was something over $1,900. What portion of this indebtedness resulted from his receipt of the personal property of his wards and what portion from the real estate fund referred to, the executors, accounting for their testator, were wholly unable to ascertain. There were no vouchers, receipts or other data to be found among the papers of the deceased guardian which would enable the accountants or the auditing judge to reach any conclusion in the way of separating the total indebtedness according to the sources from which the money was received.

The estate of the guardian was insolvent and his executors were able to pay over to his successor only about $900, leaving a deficiency of something over $1,000 due to the wards which could be recovered for them, if recoverable at all, only from the sureties on the bonds of the guardian already referred to. Under these circumstances the whole matter was submitted to the orphans' court for determination. That court, following Blauser v. Diehl, 90 Pa. 350, and other cases cited in his opinion, held that the general bondsmen cannot be liable for the default of their principal on account of loss of the proceeds of the sales of real estate and that the sureties on the special bond would be primarily liable for any failure of their principal to account for

the fund received by him from such sale. The learned judge further held that, under the peculiar conditions presented by this record, a proper decree could only be reached by the application of equitable principles, and accordingly held that each fund should be considered short proportioned to its original amount and that the respective bondsmen should make up the amount of the deficiency according to those proportions.

This resulted in the sureties on the general bond being ordered to pay about two and one-half times as much as the sureties on the special bond. No complaint is made of this decree by the sureties on the general bond, but the sureties on the special bond have taken the appeal now before us.

Now the regular way in which the extent of the default of the principal in a bond, of the kind under consideration, is judicially ascertained, is by the filing, in the orphans' court of an account exhibiting the receipts and disbursements of the fund covered by the bond. The final confirmation of such an account would be an adjudication of the amount for the payment of which the principal and his sureties as well would be bound. And, strictly speaking, the account should be confined to the special fund secured by the bond. And so in an action of debt against the sureties on such bond, an account by their principal, an administrator, mingling general moneys of the estate with a fund derived from the sale of real estate, and showing as credits, debts of decedent paid and general expenses of administration, was held to be properly rejected as evidence: Com. v. Hilgert, 55 Pa. 236.

The record now before us presents a situation differing in many material respects from that which was passed upon by the court in the case cited. This proceeding was in the orphans' court "which in its limited sphere, is a court of equity powers, and in all matters within its jurisdiction has as full authority to grant relief as any chancellor ever had:" Johnson's Appeal, 114 Pa. 132. That court had complete jurisdiction of every

phase of the subject-matter and of all parties in any way to be affected by its decree. The account presented to it clearly exhibited the amount of the charge against the guardian on account of the sale by him of the real estate of his wards. Its accuracy in this respect was not questioned. It further showed that there existed no evidence available either to the executor of the guardian who filed the account, or to the sureties on the official bond who were in court, to substantially reduce the liability created by the receipt of the money from the sale of the real estate. No objection was made in the court below, none is urged here, to the receipt of the account filed, as a piece of evidence truly portraying the status of the guardian towards the real estate fund covered by the bond.

From what appears in the record it is plain that if the learned court below had required a separate account of the real estate fund, the charge against the guardian and the appellant sureties on his real estate bond would have been the amount of the purchase money received by the guardian. No evidence was available by which either his executor or the sureties on his bond could substantially reduce that charge. The confirmation of such an account would have, in all human probability, resulted in charging these appellants with a larger sum than the decree appealed from requires them to pay.

How then can they be heard to complain? The principle that has found expression in the words stare decisis is of the first importance. If we were to depart from it there would be no fixed or certain lines for the protection of the liberty or property of the citizen. But a just appreciation of the value of precedents involves a recognition of the further principle that he who unduly clings to the letter of the law fails to reach its spirit which is the life of the law. The decree of the learned court below applying, as already stated, equitable principles to the solution of the question presented was as favorable to the appellants as they had any right to expect. It was in relief of a liability which, if enforced according to the letter of the

law, might have resulted in the payment by them of a still larger sum. We are therefore unable to see that they have been in any way aggrieved by the decree from which they appeal. The assignments of error are dismissed.

Decree affirmed.