MARY GRAHAM *vs.* BRIDGET F. BURCH *et al.*

Submitted on briefs Jan. 12, 1893. Decided April 7, 1893.

**Will not Revoked.**

Where an attempted revocation of a will is thwarted by the fraudulent act of a beneficiary, and the testator is subsequently and seasonably informed of the fact, and acquiesces in the preservation of the will, no action will lie for the alleged fraud.

Appeal by plaintiff, Mary Graham, from an order of the District Court of Ramsey County, *Kelly,* J., made September 24, 1892, denying her motion for a new trial.

James Burns was on January 8, 1887, a widower and the owner of the northerly one hundred and twenty-five (125) feet in length of lot one (1) in block fifty (50) in Dayton & Irvine's Addition to St. Paul. The plaintiff, Mary Graham, and the defendant Bridget F. Burch were his children, and only heirs at law. On that day he made and published his last will and testament, and thereby devised the northerly seventy-five (75) feet in length of the lot to Mrs. Burch, her heirs and assigns, and the remainder to Mrs. Graham. He left the will with Mrs. Burch for safekeeping. She and her husband, Patrick Burch, lived with him in one of the two houses on the property. The other house was rented to a tenant. In the fall of 1887, he determined to revoke and destroy the will, and asked for, and obtained it for that purpose. It was inclosed in an envelope. He was about to start a fire in the cookstove in the house, and placed the envelope containing the will with kindlings in the stove, intending to burn it there when the fire was started. While he was temporarily absent from the room, Mrs. Burch secretly took the will out of the envelope and secreted it, and replaced the envelope in the stove. Her father returned, and the fire was started, and he supposed the will was burned. He died December 23, 1888, aged seventy-three years. Mrs. Burch then presented the will for probate in the Probate Court of Ramsey County. That court refused to admit it to probate and record as his last will. Mrs. Burch appealed

to the District Court, where the decision was reversed. Mrs. Graham then appealed to this court, where the decision of the District Court was affirmed. *Graham* v. *Burch*, 47 Minn. 171. The mandate of this court was sent down, and the will was on November 4, 1891, admitted to probate and record, and the St. Paul Title Insurance & Trust Company, a corporation, was appointed administrator of the estate with the will annexed. The estate is still unsettled and in the course of administration. In May and December, 1887, James Burns conveyed all his property to the defendant Bridget F. Burch and her two minor children. These deeds were, at the suit of this plaintiff, set aside after his death, on the ground that they were procured by undue influence. *Graham* v. *Burch*, 44 Minn. 33.

Immediately after the will was so finally admitted to probate, this action was commenced by Mary Graham against Bridget F. Burch and her husband to obtain judgment that Mrs. Burch was not entitled to take under the will, and to have her adjudged a trustee *ex maleficio* for the plaintiff for an undivided half interest in the property, and for partition thereof, and for a receiver meantime, and for such other relief as should be found equitable. The defendants answered, and the trial court found that after deceased so attempted to destroy his will, he learned and knew that the will had not been burned, but was still in existence; and that he never further manifested any desire to destroy it, and died knowing it was in existence. Findings of the facts and conclusions of law were made February 10, 1892, and judgment ordered for defendants, but without costs. Plaintiff made a motion for a new trial, but it was denied, and she appealed to this court.

*Stevens, O'Brien & Glenn,* for appellant.

Where a devisee, by fraud or force, prevents the revocation of a will, he will in equity be considered a trustee for those who would be entitled to the estate, in case the will were revoked. *Gains* v. *Gains*, 2 A. K. Marsh, 190; *Riggs* v. *Palmer*, 115 N. Y. 506; *New York Mut. Life Ins. Co.* v. *Armstrong*, 117 U. S. 591; *Brook* v. *Chappell*, 34 Wis. 405; *Clingan* v. *Mitcheltree*, 31 Pa. St. 25; *Blanchard* v. *Blanchard*, 32 Vt. 62; 1 Perry, Trusts, (3rd Ed.) § 181.

In consequence of the view adopted in *Graham* v. *Burch*, 47 Minn. 171, this action was brought. The court found the commission of the fraud by the defendant Bridget F. Burch, but also found that the testator, James Burns, knew of the existence of the will before his death. In the former case Judge *Kerr* found that the will was kept secreted by the proponent Burch, and that the decedent ever after supposed the same had been then and there burned as he intended. Judge *Kelly*, upon what seems to us much less satisfactory evidence, finds exactly the contrary. The ease with which an unscrupulous person can produce evidence of the character relied upon in this case to establish Burns' knowledge of the existence of this will after he had attempted its destruction should, we think, be sufficient to place the court upon its guard, not to be swayed by sympathetic credulity. But under the rule of this court, we suppose the finding must stand, and the case must be considered from that aspect. In May and December, 1887, Burns conveyed the property in question to the defendant Bridget F. Burch and her two minor children. These deeds were set aside at the suit of this plaintiff after the death of Burns, upon the ground that they were procured by fraud and undue influence. It is not found by the court that Burns waived the fraud or acquiesced in the result, nor is it found that he had any knowledge of the fraud. The fact is found simply that he knew, before his death, that his will in some way had escaped destruction. And because he did not again attempt to destroy it, the inference is sought to be drawn, that he intended that the will should stand. Why should he insist upon the destruction of a will that had already become inoperative by reason of the subsequent conveyance of all of the estate thereby devised, and if there was no reason why the will should be destroyed, apparent to the mind of Burns at that time, why should his failure to insist upon an unnecessary formality be held to constitute a waiver of his rights or those of his heirs? The fact that the deeds were set aside after Burns' death in no way adds strength to the idea of a waiver. It cannot be pretended or assumed that Burns knew the deeds were fraudulent, and was proceeding upon the idea that they would be so declared by the court after his death. Undoubtedly Burns died supposing that he had lawfully con-

veyed all of his property away by deeds to Mrs. Burch and her children; it is not claimed that he did not.   He evidently regarded the will as no longer of any effect.   To our mind this case presents a practical test whether courts are able to cope with an active, intelligent person bent upon getting an advantage, and indifferent as to the means of doing so.

*Cyrus J. Thompson* and *Thompson, Gates & Thompson,* for respondents.

When the will was signed, both daughters were living with their father.   Mary then had three children, all of whom were full grown and abundantly able to support themselves.   Bridget had five children, from three to twelve years old, all incapable of caring for themselves.   No division of the property could be made, without a sale, other than as designated in the will.   The portion devised to Bridget was the most valuable; but about twenty-seven years before his death, the testator had given to Mary a tract of land then worth $550.   Prior to making the will, Bridget had never received anything by way of advancement from her father.   The act of putting the will into a cold stove, when the testator knew that it would not be destroyed for some hours, denoted at most only an intention to have the will destroyed at a *future time*.   The testator discovered the alleged fraud long before his death, and had it in his power to destroy the will, but having made no attempt to do so, it must be that he was satisfied to let the instrument remain intact.   ·The evidence adduced before Judge *Kerr*, on which findings were made and an appeal heard before this court in 1891, tended to prove that after Burns placed the will in the stove he learned that it had not been destroyed.   The evidence to the effect that the testator died in ignorance of the fact, that his will was not destroyed, .was wholly irrelevant and immaterial in that action.   It was because of its irrelevancy that Judge *Kerr* was never asked to change that finding of fact.   On the other hand, at the trial of this action before Judge *Kelly*, it was important to ascertain whether or not Burns knew that his will had not in fact been burned; and knew it in ample time to. revoke or destroy it.   His original attempt to destroy the

will was made to save his daughter trouble, because he thought he had conveyed the land to her, not because he had changed his mind and concluded that she ought not to receive it. What then becomes of the apparent technical fraud which was originally perpetrated? It was waived by the testator in his lifetime with full knowledge of all the facts, and no estoppel can arise, nor can respondent be chargeable with a trust by reason of it. The general doctrine of trusts is well stated in appellants' brief, but we think it has no application here.

VANDERBURGH, J. The contest grows out of the attempted revocation of a will which was under consideration in *Graham* v. *Burch,* 47 Minn. 171, (49 N. W. Rep. 697.) It is sought by this action to charge defendant as trustee *ex maleficio* of the plaintiff for that portion of the estate received by defendant, under the will attempted to be destroyed by the testator, which plaintiff would have been entitled to had he died intestate, on the ground that the revocation of the will was prevented by the fraudulent conduct of the defendant. The case must turn upon the effect to be given to certain findings of fact in this case in reference to the subsequent discovery by the testator that the will had not been destroyed, and his acquiescence in the preservation of the will. The attempt to destroy the will was made in 1887. It is found that he at that time believed that his will had been burned and destroyed, and that the defendant Burch fraudulently induced him so to believe by concealing from him the fact that she had removed the will from the envelope containing it, and replaced the envelope in the stove in which he had placed it to be burned; "that the testator continued thereafter to live in the same house with defendant, who was his daughter, until December 23, 1888, when he died; and that after the time said James Burns, the testator, so attempted to destroy his will, and before the time of his death,—but exactly at what date does not appear,—said James Burns learned and knew that his said will had not been destroyed, but that the same was still in existence, and that he died with that knowledge, and without manifesting any further desire of making any further attempt to destroy the will."

The plaintiff admits that there is evidence in the case sufficient to support these findings.   The defendant testifies that his attention was particularly called to it, and that he saw the will many times afterwards, and during the last summer of his life he assured her she would have no trouble about the property, because she had got "the deed and the will."   It appeared that a deed which he had given her of the property in controversy was afterwards set aside, on the ground that it was procured by undue influence.   The court below properly ordered judgment for the defendant upon the facts found.   The testator, intending to destroy the will, placed it in an envelope in a stove, expecting it would be destroyed when the fire was lighted therein, which was not done for several hours.   In the mean time it was abstracted by the defendant.   There was clearly a *locus penitentiae*; so that if it was subsequently taken out, and with his knowledge and consent thereafter remained intact, he must be deemed to have ratified her act, and to have abandoned his purpose to destroy it.   He might change his mind before it was destroyed, and, if he became cognizant of the facts, it would make no difference whether he took it out of the stove himself or it was done by another person, and afterwards reported to him.—*Non fit volenti injuria.*

The conclusion of the trial court in the case is therefore supported by the facts found.

Order affirmed.

(Opinion published 55 N. W. Rep. 64.)