CATHERINE BOHLEBER et al. Appellants, vs. JOSEPH REB-
STOCK et al. Appellees.

*Opinion filed June 21, 1912.*

WILLS—*mere intention to revoke will is not sufficient.* Under
section 17 of the Wills act, providing what acts shall constitute
the revocation of a will, and that no spoken words, unaccompanied
by any of the acts specified, shall be sufficient, a court of equity
is not authorized to declare a will revoked upon proof of the tes-
tator's mere intention and desire to revoke it, even though such
intention and desire were frustrated by beneficiaries of the will.

APPEAL from the Circuit Court of White county; the
Hon. W. H. GREEN, Judge, presiding.

JOE A. PEARCE, and ROY E. PEARCE, for appellants:

If a revocation is accomplished through fraud or other
outward undue control the revocation is ineffective. *Voor-
his* v. *Voorhis,* 50 Barb. 119; 73 Me. 595; 68 Md. 203.

The testator may, during his life, revoke a devise or
abrogate it by conveyance. *Lynn* v. *Lynn,* 135 Ill. 18.

Intention to revoke one's will will have that effect if the
testator is led to believe he has destroyed his will.   1 Red-
field on Wills, (3d ed.) chap. 7, sec. 31; *Pryor* v. *Coggin,*
17 Ga. 444; *White* v. *Carter,* 1 Jones' L. 197.

Intention to revoke one's will, until carried into effect
as provided by statute, can have no effect; but if such in-
tention is defeated by fraud, the party moving cannot bene-
fit therefrom. *Blanchard* v. *Blanchard,* 32 Vt. 62.

CONGER, PEARCE & CONGER, for appellees:

The mere wishes and declarations of a testator can
never effect a revocation.   Page on Wills, sec. 244.

An unexecuted intent to revoke, no matter how clearly
expressed, is insufficient unless accompanied by one of the
acts of destruction prescribed by the local statute, even
though the attempt was frustrated by the improper conduct

of a third person, for, the legislature having pointed out certain modes by which a will may be revoked, it is not within the power of the judiciary to dispense with any of the prescribed requirements and accept the intention to perform the prescribed act as equivalent to the act itself. *Reynolds* v. *Adams,* 90 Ill. 134; *Dickie* v. *Carter,* 42 id. 376; 29 Am. & Eng. Ency. of Law, (1st ed.) 270, 271; Jarman on Wills, (4th ed.) 162; Page on Wills, secs. 130, 255; *Blanchard* v. *Blanchard,* 32 Vt. 62; *Clingan* v. *Mitcheltree,* 31 Pa. St. 25; *Mundy* v. *Mundy,* 15 N. J. Eq. 290; *Doe* v. *Harris,* 6 Ad. & Ell. 209; *Gains* v. *Gains,* 2 A. K. Marsh. 190; *Boyd* v. *Cook,* 3 Leigh, 32; *Malone* v. *Hobbs,* 1 Rob. 346; *Delafield* v. *Parrish,* 25 N. Y. 9; *Hise* v. *Fincher,* 10 Ired. 139; *Kent* v. *Mahaffey,* 10 Ohio St. 204; 47 Minn. 171; 11 Ind. 95; 3 Strobh. 44; 113 Ky. 102.

Mr. JUSTICE FARMER delivered the opinion of the court:

This suit was begun by appellants by bill in chancery filed in the circuit court of White county. The bill alleged complainants were children of John Rebstock, who died in White county, Illinois, November 13, 1910, leaving as his children and only heirs-at-law the complainants and all the persons named as defendants to the bill except Jacob Fechtig, who was a step-son; that on November 19, 1902, said John Rebstock executed an instrument in writing purporting to be his last will and testament, and in December, 1906, he executed a codicil to said will. Copies of the will and codicil were made exhibits to the bill. By the original will the testator made substantial bequests of land to the five children who are made defendants to the bill. He also gave to the two daughters made defendants, Amelia and Margaret, all his household and kitchen furniture, and bequeathed to Jacob Fechtig, the step-son, $200 in money. To the complainant Elizabeth Kirchoff he gave $600, which was to be paid to her by defendant Joseph Rebstock and was made a charge against the land devised to him by the

testator.   He gave the complainant Catherine Bohleber $100
by the original will and $100 additional by the codicil.
The will states that the reasons of the testator for making
the bequests in the amounts named to complainants were
that he had previously made advancements to them out of
his-estate.   By the original will he also gave his son Wil-
liam Rebstock the sum of $500, but this bequest was can-
celed and annulled by the codicil.   By the original will, in
addition to the land devised his son Edward Rebstock, he
gave him the sum of $500 in money.   The will then pro-
vided that if anything was left after the devises and be-
quests were satisfied it should be equally divided among all
the testator's children.   The son Edward, and the step-son,
Jacob Fechtig, were named executors of the will.   After
the death of the testator the will was admitted to probate
and letters testamentary issued to the persons therein named
as executors.   The bill alleges that before the death of the
testator he desired to change or revoke said will and codi-
cil; that said instruments were in the city of Carmi, Illi-
nois, and the testator resided on his farm five miles from
said city; that for more than two months before his death
he was so feeble as to be unable to leave his house and
most of the time was confined to his bed; that the son
William Rebstock lived with his father, and Joseph Reb-
stock lived near him and was during the last illness of the
testator at his home the greater part of the time; that
during this period of confinement of the testator he re-
quested and entreated his sons William and Joseph to have
a lawyer brought to his house so that he might change
or revoke his will and codicil, but that said William and
Joseph Rebstock refused to comply with this request and
threatened violence to anyone who would bring a lawyer to
their father or in any manner render assistance to him in
changing or revoking his will and codicil, thereby defeating
his intention to revoke or change said instruments.   The bill
prays that said will and codicil and the probate thereof be

set aside and declared null and void and that the estate of the testator be distributed among his heirs according to the laws of descent. A demurrer to the bill was sustained and a decree entered dismissing the same for want of equity. The complainants have brought the record to this court by appeal.

The question presented is whether the desire and intention of a man who has made his will to revoke the same but who is prevented from doing so by the fraud or coercion of a party who will be benefited by the will not being revoked, are sufficient to justify a court of equity in decreeing the revocation of the will and setting it aside.

Section 17 of chapter 148 of Hurd's Statutes reads as follows: "No will, testament or codicil shall be revoked, otherwise than by burning, canceling, tearing or obliterating the same, by the testator himself, or in his presence, by his direction and consent, or by some other will, testament or codicil in writing, declaring the same, signed by the testator or testatrix, in the presence of two or more witnesses, and by them attested in his or her presence; and no words spoken shall revoke or annul any will, testament or codicil in writing, executed as aforesaid, in due form of law." Most, if not all, of the States of the Union, as well as England, now have similar statutes. The history of this legislation is referred to in section 244 of Page on Wills. Prior to the enactment of any legislation upon this subject in England, the question whether an intention to revoke a will was sufficient to constitute a revocation was considered by the courts, and the courts held that such an intention was sufficient to effect a revocation. These decisions led to such uncertainty in the stability of wills and to such suspicion that wills were being defeated by perjury that an act was passed defining what was necessary to the revocation of a will by the testator in his lifetime, and, as above stated, the various States of this country have enacted similar legislation. It will be seen our statute provides that no

will or codicil shall be revoked otherwise than by burning, canceling, tearing or obliterating the same by the testator himself, or by someone in his presence and by his direction and consent, or by some other will or codicil duly executed. Under similar statutes the courts of this country have practically uniformly held, and text-book writers also lay down the rule, that the mere intention to revoke a will, unaccompanied by any act of the testator to execute that intention, will not be sufficient to revoke the will, even though the execution of the intention was frustrated by the fraud and improper conduct of other persons. Slight acts of tearing, burning or canceling, with the purpose and intention of revoking a will, may be sufficient for that purpose, but the intention to revoke, unaccompanied by any of the acts of destruction required by the statute, is insufficient.

In section 255 of Page on Wills the author discusses the question whether the prevention of the revocation of a will by fraud of the beneficiaries is sufficient to justify a court in declaring a revocation under statutes providing what acts will be sufficient for that purpose, and says the weight of authority is that in the absence of any of the acts specified in the statute a will cannot be revoked by the intention of the testator alone, no matter by what deceit he was prevented from manifesting his intention. According to the author but three States (Connecticut, Georgia and Tennessee,) have decided a contrary view, but in some, if not all, of these States there was at the time of the decisions no statute specifying what acts were necessary to revoke a will. Mr. Page expresses the view that there ought to be provided by law some remedy in a case where the testator was prevented from revoking his will by actual coercion. Any such remedy, however, would have to be provided by statute.

The following are some of the authorities in point in support of the proposition that where there is a statute providing what acts will constitute revocation of a will,

proof of an intention to revoke, unaccompanied by any of the acts provided by statute, is not sufficient to revoke a will: Jarman on Wills, (4th ed.) 162; *Gains* v. *Gains,* 2 A. K. Marsh. 190; *Blanchard* v. *Blanchard,* 32 Vt. 62; *Mundy* v. *Mundy,* 15 N. J. Eq. 290; *Clingan* v. *Mitcheltree,* 31 Pa. St. 25; *Kent* v. *Mahaffey,* 10 Ohio St. 204; *Hise* v. *Fincher,* 10 Ired. 139; *Delafield* v. *Parrish,* 25 N. Y. 9; *Graham* v. *Burch,* 47 Minn. 171; *Runkle* v. *Gates,* 11 Ind. 95.

The decree of the circuit court sustaining the demurrer to and dismissing the bill for want of equity is affirmed.

*Decree affirmed.*