[S. F. No. 8373. In Bank.—November 7, 1919.]

## ANTONIO DA ROSA BRAZIL et al., Appellants, v. LUIZA ROSA SILVA, Respondent.

[1] ESTATES OF DECEASED PERSONS—ACTION TO ESTABLISH TRUST—STATUTE OF LIMITATIONS—PLEADING.—Where, in an action by heirs at law to charge the defendant as sole distributee under a will with a constructive trust in their favor as to the property received, the original complaint endeavored to set up the same cause of action as the amended complaint, the critical date on the question of the statute of limitations was the date of the filing of the original complaint.

[2] ID.—FACTS CONSTITUTING CAUSE OF ACTION—PREVIOUS GROUND OF CONTEST TO WILL—ORDER ADMITTING WILL TO PROBATE—PLAINTIFFS NOT CONCLUDED.—In such action, where the facts presented by the complaint were presented by way of contest to the will and on appeal were held not to be a ground for refusing probate, and also that if the present plaintiffs were entitled to any relief it would have to be sought outside of the probate proceedings, the plaintiffs were not concluded by the order admitting the will to probate.

[3] ID.—FRAUDULENT PREVENTION OF REVOCATION OF WILL—DISTRIBUTEE TRUSTEE FOR HEIRS—EQUITY.—Where the sole distributee under a will by deceit prevented the actual destruction of the will by the testator *animo revocandi*, so that the will was preserved contrary to the intention and belief of the testator, equity will declare that such distributee held the property received under such will in trust for the heirs at law, notwithstanding the lack of an actual revocation in the manner prescribed by statute.

[4] ID.—EVIDENCE—CHARACTER OF PROOF.—In an action by heirs at law to charge the defendant as sole distributee under a will with a constructive trust in their favor as to the property received, on the ground that such defendant fraudulently prevented the revocation of the will, the fraud must be clearly and satisfactorily proven.

[5] ID.—RECOVERY OF BOTH REAL AND PERSONAL PROPERTY—STATUTE OF LIMITATIONS.—Where in such action both real and personal property are involved, while the action could be brought within the period limited for actions on the ground of fraud, it could be also brought as to the personalty within the period permitted for actions to recover personalty, and as to the realty within the period permitted for actions to recover realty.

[6] ID.—ACCRUAL OF CAUSE OF ACTION—DISTRIBUTION.—In such action, where the property was in the possession of the defendant from the death of the testator but she was the administratrix of the estate, the statute of limitations did not begin to run until the decree of distribution, since prior to that time the defendant's possession was in her capacity as administratrix and the plaintiffs could not have maintained an action for possession against her in her individual capacity.

APPEAL from a judgment of the Superior Court of Fresno County. George E. Church, Judge. Reversed.

The facts are stated in the opinion of the court.

Everts & Ewing for Appellants.

James Gallagher, M. B. Harris and E. M. Harris for Respondent.

OLNEY, J.—The plaintiffs and appellants in this action claim to be the heirs at law of one Frank V. Silva, deceased. The defendant is the sole distributee of Silva's estate under a decree of distribution made pursuant to his will, duly probated, whereby he gave all his property to the defendant. The estate was of very considerable value and comprised both real and personal property. By the action the plaintiffs seek to charge the defendant with a constructive trust in their favor as to the property which she so received. The original complaint was amended, and to the amended complaint a demurrer was interposed, which was sustained by the lower court and the plaintiffs failing to amend again, judgment was entered against them. From

this judgment they appeal. Two grounds are relied upon before us to support the demurrer: First, that the complaint does not state a cause of action, and second, that any cause of action is shown on the face of the complaint to be barred by the statute of limitations. The facts as set forth in the complaint are:

Frank V. Silva died in May, 1910. Four years before he had made a will, leaving all his property to the defendant whom he described as his wife. The will was admitted to probate in April, 1912. Thereafter the plaintiffs commenced a contest to revoke its probate and the contest was decided against them. In April, 1915, a decree of distribution was made distributing the estate to the defendant. The present action was commenced November 20, 1915. [1] The amended complaint was not filed until February, 1917, but inasmuch as the original complaint endeavored to set up the same cause of action as the amended complaint, the critical date on the question of the statute of limitations is the date of filing of the original complaint.

The constructive trust with which it is sought to charge the defendant is based upon her alleged fraud. It is averred that the defendant was not in fact the wife of Silva and that the plaintiffs are his sole heirs at law, that Silva when he made his will delivered it to the defendant, that thereafter he demanded it back from her for the purpose of destroying it and thereby revoking it, that she thereupon in the presence of Silva and at his request destroyed by burning an envelope which she falsely stated to him to contain his will but which in fact did not, that this false statement was made by the defendant for the purpose of preserving the will without the knowledge of Silva so that she might take advantage of its terms in case of his death, and, finally, that Silva from that time on believed that the will had been destroyed and that he had no will and died in that belief. In other words, to put it more briefly, the alleged fraud by reason of which it is sought to charge the defendant with a constructive trust, consisted in her preventing by deceit the actual destruction *animo revocandi* of the will in which she is the sole beneficiary, with the result that it was preserved contrary to the intention and belief of the testator and the defendant has now

acquired the legal title to his property, which otherwise would have gone to the plaintiffs.

In support of their contention that the complaint does not state a cause of action counsel for the defendant advance two propositions. The first is that the matter is determined by the order admitting the will to probate. The soundness of this position depends upon whether or not the issues presented by the present complaint are questions going to the final question before the probate court, that is, the question as to the instrument being the legal and valid will of the decedent unrevoked at the time of his death. If the issues presented by the complaint are not of this character, it is plain that they could not be passed on in the probate proceedings and are not concluded by the result of those proceedings. [2] But this point was determined in *Estate of Silva,* 169 Cal. 116, [145 Pac. 1015], on appeal from the very order of probate here relied on, and that decision must be taken as overruling anything to the contrary in *Del Campo* v. *Camarillo,* 154 Cal. 647, [98 Pac. 1049.] It was held that the facts now presented by the complaint and then presented by way of contest were not a ground for refusing probate of the will, and could not be considered, and that if the present plaintiffs were entitled to any relief it would have to be sought outside of the probate proceedings. It follows that plaintiffs are not concluded by the order admitting the will to probate.

The second point urged by defendant's counsel in support of their position that the complaint does not state a cause of action is that no relief against the result of such a fraud as that here alleged can be granted, that the wrong done is one for which there is no remedy. There is quite a little *dicta* to the effect that where the revocation of a will is prevented by fraud, a trust may be imposed upon the beneficiary of the will in favor of the injured heir. (*Estate of Silva, supra; Blanchard* v. *Blanchard,* 32 Vt. 62; *Gains* v. *Gains,* 9 Ky. 190, [12 Am. Dec. 375]; *Graham* v. *Burch,* 53 Minn. 17, [55 N. W. 64].)

But so far as we are aware the only decision directly upon the question is *Kent* v. *Mahaffey,* 10 Ohio St. 219, which is to the contrary. As the matter is there put quite strongly, we quote from it at some length.

"The statute was designed to prevent the frauds and perjuries arising out of mere parol revocations, and to sanction a recovery in this case, would open the door for the very evils which the statute intended to exclude.

"If one who fraudulently prevents the revocation of a will, may be treated as trustee for the heir at law, it would seem to follow, by a parity of reasoning, that where an heir at law, by force or fraud, prevents the execution of a will, he should also be held as a trustee for the beneficiary of the unexecuted will. No lawyer would, I think, hazard the opinion, that the heir at law could, in such case, be declared a trustee; and why not, if the general principle adverted to is applicable to the defendants in this case? Both alike would be holding the legal title to estates, which in equity and good conscience, they ought not to retain. If it is said that the heir is in by the statute of descent, so too it may be said, that the devisee claims under a will made before the fraudulent interference. The reason is obvious why the heirs would not be so regarded, and the same reason must also exculpate the devisee. The heir at law cannot be so treated, because the law, for wise purposes, has prohibited a will, except it be executed under certain formalities; and the statute has also prohibited the revocation of a will, except under certain formalities. To permit a recovery in either case, would be to make a will, or, as the case may be, to revoke one in a manner which the statute forbids. Is it not obvious that, to hold either liable, would, in effect, nullify the statute?"

Now it is to be noted that the opinion quoted does not controvert, as it could not well do, the general principle upon which relief is asked for in such cases as the present, namely, that where the defendant has by his own wrong obtained the legal title to property, a trust as to such property will be imposed upon him in favor of the party injured. This principle is a familiar one and is based upon the maxim, which has been carried into our code (Civ. Code, sec. 3517), that no one may profit by his own wrong. The instances of its application are as various nearly as the ways in which property can be wrongfully acquired. A most common illustration is the imposition of a trust upon a party holding under a deed fraudulently obtained from the grantor, where admittedly the deed is valid to the ex-

tent of conveying the legal title. [3] Nor can there be any doubt that such a case as the present comes within this principle. If the facts alleged in the complaint are true, the defendant has by the grossest fraud acquired the legal title to property which but for her fraud would have gone to the plaintiffs. The opinion quoted does not deny this general principle nor its application normally in the circumstances here presented. The reason advanced for not applying it in those circumstances is that by statute a will can be revoked only in certain prescribed ways, that no such revocation was in fact made, and that to impose a trust upon the defendant would be in effect to evade the statute and make the equivalent of a revocation something which by statute is not a revocation. In other words, the position of the court in the opinion quoted is that in face of the statute equity is helpless to grant the relief which otherwise it would grant upon the facts being proven, almost as a matter of course. If this position be not sound, no reason is advanced, and we do not see that any can be advanced, why the general principle mentioned should not be applied and relief granted here as in other cases where the defendant has acquired the legal title to property by his own wrong.

But the position so taken is not sound. It is in fact directly contrary to the established rule of equity. It is a familiar function of equity and one very characteristic of its peculiar province, to refuse to permit and affirmatively to prevent, a statute being used as a means whereby to perpetrate a wrong. A common and very plain illustration is the specific enforcement of a partially performed oral contract which is within the statute of frauds. Equity does not stay its hand in such a case because, forsooth, the statute requires a contract in writing and there is none, and whatever may have been the historical reason why courts of equity granted such relief originally, the reason now universally assigned is that not to grant it would be to enable the defendant to perpetrate a fraud by means of the statute.

Another illustration is that of reforming a contract and enforcing it as reformed, although it is within the statute of frauds. This, in its final analysis, is the enforcing of a contract, where the statute requires a written one and no such written contract as that finally enforced exists.

Another illustration of the same thing is found in the origin of the doctrine, now incorporated in most recording acts but originally not found there, that where two deeds to the same property are made by the same grantor, the second, although recorded first, will yet be inferior to the first, if the second grantee took with notice of the rights of the first. By the statute of 7 Anne, c. 20, 91, all unregistered conveyances were made void as against subsequent purchasers for value. No exception to the rule was made in case the second purchaser took with notice of the previous conveyance. Because of this it was held in *Doe* v. *Alsopp,* 5 Barn. & Ala. 142, that the legal title passed to the second purchaser although he had taken with notice. But in equity relief was given under such circumstances by imposing upon the legal title of the second grantee a trust in favor of the first on the ground that the action of the second grantee in purchasing the property with notice of the rights of the first and recording his deed was, in effect, a fraud and an attempt to use the statute to perpetrate a wrong to his advantage. (*Neve* v. *Neve,* 1 Ves. 64, Amb. 436. See, also, 1 Pomeroy's Equity Jurisprudence, secs. 430, 431.)

An illustration of the same principle in connection with a homestead statute is *Fox* v. *Hubbard,* 79 Mo. 390, and in connection with a statute of limitations is *Vane* v. *Vane,* L. R. 8 Ch. 383. (See, also, *In re McCallum,* [1901], 1 Ch. Div. 143.)

In *Kent* v. *Mahaffey,* 10 Ohio St. 219, it is said that where the execution of a will has been prevented by force or fraud, "no lawyer would hazard the opinion that the heir at law could be declared a trustee." But Lord Thurlow, in *Dixon* v. *Olmius,* 1 Cox 414, [29 Eng. Rep. 1227], and in *Luttrell* v. *Olmius* stated by Lord Eldon with approbation in *Mestaer* v. *Gillespie,* 11 Ves. 638, [32 Eng. Rep. 1236], did that very thing. He enforced in equity against the heir on whose behalf the republication of a will had been prevented by force and fraud, the rights which would have existed under the will if republished.

Finally upon this point we see no real distinction whatever between the present case and those wherein a decedent has either been prevented from making a will by the promise of the heir that he will carry out the decedent's wishes, or

has been prevented from revoking a will by a similar promise of the beneficiary. In such a case if the heir or beneficiary, as the case may be, does not carry out the promise, a trust will be imposed upon him in equity in favor of those who would have received the property except for his promise. This is no longer questionable. And it makes no difference whether the promise be oral or in writing or within the statute of frauds or not. Furthermore, the reason for granting the relief in such cases, the gravamen of the cause of action, is held to be, not the promise, but the fraud of the defendant of which the promise is but a part. If the fraud be there, as it certainly is in the present case according to the averments of the complaint, it would seem to be immaterial whether a promise be a part of it or not. In *Curdy* v. *Berton,* 79 Cal. 420, [12 Am. St. Rep. 157, 5 L. R. A. 189, 21 Pac. 858], a gift was made by will upon the oral promise of the beneficiary to distribute it in a certain manner. As reported, the argument of counsel was that "the trust not having been evidenced by a writing, was void as a testamentary disposition. (Civ. Code, sec. 1276.)" This court, however, held that it made no difference whether the promise was in writing or not and then quoted at length from *In re O'Hara,* 95 N. Y. 403, [47 Am. Rep. 53], saying that it did so because of the lucid statement there of the principles applicable. A portion of this quotation is so pertinent here that we repeat it. [The italics are ours.]

"If, therefore, in her letter of instruction, the testatrix had named some certain and definite beneficiary capable of taking the provision intended, the law would fasten upon the legatee a trust for such beneficiary, and enforce it, if needed, on the ground of fraud. Equity acts, in such case, not because of a trust declared by the testator, but because of the fraud of the legatee. For him not to carry out the promise by which alone he procured the devise and bequest is to perpetrate a fraud upon the devisor, which equity will not endure. The authorities on this point are numerous. [Here follows a long list of cases.] The circumstances in these cases were varied and sometimes peculiar, but all of them either recognize or enforce the general doctrine. It has been twice applied in our own state. (*Brown* v. *Lynch,* 1 Paige (N. Y.), 147; *Williams* v. *Fitch,* 18 N. Y. 546.)

In the last of these cases the making of a bequest to the plaintiff was prevented by an agreement of the father, who was next of kin, to hold in trust for the plaintiff; and the English cases were cited with approval, and the trust enforced. *All along the line of discussion it was steadily claimed that a plain and unambiguous devise in a will could not be modified or cut down by extrinsic matter lying in parol or unattested papers and that the statute of frauds and that of wills excluded the evidence; and all along the line it was steadily answered that the devise was untouched; that it was not at all modified; that the property passed under it but the law dealt with the holder for his fraud and out of the facts raised a trust ex maleficio instead of resting upon one as created by the testator.*

We can but conclude that *Kent* v. *Mahaffey,* 10 Ohio St. 219, proceeds upon a failure to recognize and appreciate a fundamental principle of equity jurisprudence, and one, as we have said, characteristic of the peculiar province of equity. We hardly need point out that equity does not in such a case as this grant relief simply because there has been an abortive attempt to comply with the statute. Equity will not, in effect, make a revocation where there was none under the statute merely because the decedent desired or actually attempted to make one. It grants relief only in case and because of a wrong done by the defendant of which he seeks to reap the fruit. In such a case equity will not permit him to have safe shelter under the formal requirements of the law, either statutory or other. It follows that the complaint in this case states a cause of action and the demurrer cannot be sustained on that ground.

[4] In this connection, since the cause must go back for trial, it may not be amiss to call attention to the rule that because of the very nature of these cases the fraud or other wrong relied on must be proven clearly and satisfactorily. The relief asked for is so extraordinary and the opportunity for false testimony so great, since the evidence in most cases must be largely parol, that it is only where it is fairly certain that the circumstances calling for the relief actually exist, that the extending of it may be justified.

As to the statute of limitations the question is concluded by *Murphy* v. *Crowley,* 140 Cal. 141, [73 Pac. 820]. It was there held that even as to a suit in equity where the grava-

men of the cause of action was fraud, the period of three years allowed by the code for the commencement of an action based on fraud was not the only period permissible, where it was sought by the suit to recover the title to or possession of real property; and that in such a case the five-year period allowed for actions to recover real property also applied. The reason given in *Murphy* v. *Crowley* for this ruling was that whatever might be the merits of the question, it was concluded by previous decisions in this state. The force of this reason is now doubly strong, and we can but follow the rule, although viewed as a new question its correctness is exceedingly doubtful, to say the least.

While *Murphy* v. *Crowley* involved realty alone, there is no reason why it should not apply where personalty is involved. [5] In the present case both real and personal property are involved, with the result that while the action could be brought within the period permitted for actions on the ground of fraud, it could also be brought as to the personalty involved within the period permitted for actions to recover personalty, and as to the realty involved within the period permitted for actions to recover realty.

The present action was brought within both of these latter periods. While an action to impose a trust because of fraud could be maintained as soon as the wrongdoer consummated his fraud and obtained the legal title to the property involved, which in this case would be when the original order probating the will was made, unless the order was suspended by appeal, and then when affirmed on appeal, an action for possession of the property could not be maintained against the defendant as long as the property was in the possession of the personal representative of the decedent for purposes of administration. Where, as in this case, the defendant was the administratrix of the estate, her possession up to the time of distribution must be taken to have been in her capacity as administratrix. (Code Civ. Proc., sec. 1452.) It was only upon her possession ceasing to be of this character, that it could be attacked by the plaintiffs. [6] This would be when distribution was had, and under *Murphy* v. *Crowley* and the decisions which precede it, it must be held that the present action, even though based exclusively upon fraud, can be maintained as to personalty within the period after distribution allowed for

actions for the recovery of personalty and as to realty within the period after distribution allowed for actions for the recovery of realty. As already stated, the complaint shows that the property involved was distributed in April, 1915. Within a few months thereafter the present action was commenced. It follows that upon the point of the statute of limitations as well, the demurrer was not well taken.

Judgment reversed, with directions to the lower court to overrule the demurrer of the defendant and permit her to answer.

Shaw, J., Melvin, J., Wilbur, J., Lawlor, J., Lennon, J., and Angellotti, C. J., concurred.