William J. BLAKELEY, Plaintiff-Appellee.

v.

Mae BLAKELEY, Defendant-Appellant.

No. 13495.

United States Court of Appeals Seventh Circuit.

Feb. 1, 1962.

Rehearing Denied March 2, 1962.

Jay Leo Rothschild, New York City, Daniel A. Costigan, John E. Toomey, Chicago, Ill., Martin J. Desmoni, New York City, for appellant.

Arthur Abraham, Philip L. Howard, Harry J. Myerson, Chicago, Ill., for appellee.

Before KNOCH, CASTLE and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

William J. Blakeley, plaintiff-appellee, brought this diversity action in the District Court against the defendant-appellant, Mae Blakeley, his stepmother, the wife of Hugh J. Blakeley, deceased. In his complaint plaintiff alleged that his father, Hugh J. Blakeley, shortly before his death, sought to vest in plaintiff one half of certain stocks, bonds and bank accounts acquired by decedent with his own funds and held jointly in the names of decedent and the defendant, and

sought to bequeath to plaintiff one half of the estate left by decedent at his death.[1] It was alleged that the defendant prevented decedent from carrying out his intention, and the complaint prayed that the defendant be charged as a constructive trustee for plaintiff of one half of the property jointly held by defendant and decedent prior to his death and of one half of the property constituting the decedent's estate.

After trial before the court without a jury, the District Court made and entered findings of fact and conclusions of law, and entered judgment for the plaintiff as prayed and decreeing that defendant effect the transfer of such interest to plaintiff and render an accounting thereof. The defendant appealed.

The defendant contends that basic findings of fact made by the District Court are without evidentiary support and that, among other things, Illinois is not a jurisdiction which recognizes and applies the constructive trust doctrine to effectuate the purpose of a decedent who was wrongfully prevented by conduct of the legal beneficiary[2] from making a testamentary or an inter vivos disposition of his property.

We have carefully reviewed the record. But the critical factor which in our opinion must govern disposition of the case does not require that we undertake to set forth a full or detailed statement of the facts or complete summary of the evidence. We are satisfied that on the record before us Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. precludes us from disturbing the District Court's findings that the conduct of the defendant created a disturbance in the decedent's hospital room which effectively prevented him from executing a power of attorney and a new last will and testament on July 3, 1958, which instruments he then desired and intended to

1. Decedent's property consisted entirely of personalty and all but a small portion was jointly held in the names of decedent and defendant.

2. "Legal beneficiary" is used herein to refer to the heir, legatee, devisee, joint tenant or other person who would receive an interest in the property unless some change in ownership or disposition is effected.

execute with the purpose that the plaintiff receive a one half interest in all of his property at his death. There is substantial support in the record for such findings. We cannot say they are clearly erroneous.

At the time of the July 3 incident the decedent had been a hospital patient since May 19, 1958, and later on that day underwent a surgical operation. But the evidence wholly fails to establish a basis for a finding or conclusion that defendant's conduct on July 3, continued to be operative until decedent's death on July 16, 1958. The court did make a finding that subsequent to the decedent's operation on July 3, "[v]isitors were thereafter barred from his room and he became progressively worse until he died on July 16, 1958". But it is clearly established by the record that although visitors were barred for two days following the surgery, the plaintiff, after that period, continued to visit and remain with the decedent during most of the morning of each day until his death; that the defendant was not present at such times but made afternoon visits; that decedent continued to converse on the telephone twice daily with a friend who had attended him each morning prior to plaintiff's commencement of his daily visits upon his arrival from Guam on June 17, 1958; that decedent was well orientated during all of the period following July 3, until his death, and there was no change in his mental condition; that, although his physical condition worsened, he continued to converse intelligently and coherently, retained an interest in news and sporting events up to the time of his death; and that he mentioned the July 3 incident to his friend in one of his telephone conversations with her, describing it as an argument between his wife and the plaintiff's

wife over changing his Will.[3] The record is barren of testimony, medical or otherwise, which would indicate that from July 3 until his death, the decedent was either incompetent or unable to execute a Will, power of attorney, or whatever instruments would have been necessary to effect a change in favor of his son in the disposition or ownership of his property. Nor does it appear that subsequent to July 3 the decedent discussed the subject or made any request evidencing a desire to effect any change in the ownership of his property or to make a different testamentary disposition thereof. And there is a complete absence of any showing of coercion or duress operating upon the decedent during this period or of his inability to take such action concerning disposition of his property as he may have desired.

The defendant urges that the constructive trust doctrine plaintiff seeks to invoke is not recognized and applied in Illinois to situations involving wrongful interference by the legal beneficiary with a person's attempt to effect a different disposition of his property.[4] But, in the posture in which we find the present case, it is not necessary that we resolve that question. Assuming, without deciding, that the doctrine is so recognized and applied in Illinois an essential and indispensable factor to its application is that the wrongful prevention continue operative until the death of the person attempting to make the disposition. Cf. Graham v. Burch, 53 Minn. 17, 55 N.W. 64. Plaintiff's reliance upon cases such as Pope v. Garrett, 147 Tex. 18, 211 S.W. 2d 559 is wholly misplaced. In Pope it was pointed out that the jury found:

"Evelyn Jones and Lillie Clay Smith, by physical force or by creating a disturbance, prevented her [the decedent] from carrying out

3. Decedent's existing Will, which remained unchanged, left all of his property to defendant.

4. Plaintiff contends that Lowe Foundation v. Northern Trust Co., 342 Ill.App. 379, 96 N.E. 831 and Bradley v. Fox, 7 Ill.

2d 106, 129 N.E.2d 699 evidence Illinois recognition of the doctrine as applicable to such situations and dispel whatever doubt the rationale of Bohleber v. Rebstock, 255 Ill. 53, 99 N.E. 75, 41 L.R.A., N.S., 105, may have engendered on the subject.

her intention to execute the will; that Carrie Simons was of sound mind at the time and was not in an unconscious condition; and that *shortly after this incident* she suffered a severe hemorrhage, *lapsed into a semi-comatose condition and remained in that condition continuously until her death, \* \* \*.*" (emphasis supplied)

In the instant case there was no finding of continued operative effect of the prevention resulting from the disturbance caused by defendant on July 3, 1958 until decedent's death; nor would the record support such a finding.

The judgment order of the District Court is reversed.

Reversed.